In the
United States Court of Appeals
For the Seventh Circuit

No. 99-4146

Mary Decker Slaney,

Plaintiff-Appellant,

v.

The International Amateur Athletic Federation
and The United States Olympic Committee,

Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.

No. IP-99-0502-C-D/F--S. Hugh Dillin, Judge.

Argued January 19, 2001--Decided March 27, 2001

    Before Flaum, Chief Judge, and Posner and Ripple,
Circuit Judges.

    Flaum, Chief Judge.  Former Olympic runner Mary
Decker Slaney ("Slaney") brought suit against the
International Amateur Athletic Federation
("IAAF") and the United States Olympic Committee
("USOC") shortly after an IAAF arbitration panel
determined that Slaney had committed a doping
offense. Slaney's complaint raised a litany of
state-law claims which the district court
determined it lacked subject matter jurisdiction
over because of the applicability of The New York
Convention and the Amateur Sports Act.
Additionally, the complaint alleged violations of
the Racketeer Influenced and Corrupt
Organizations Act ("RICO"), which the district
court dismissed pursuant to Fed.R.Civ.P.
12(b)(6). Slaney now appeals the district court's
decision, arguing that: (1) the New York
Convention does not bar adjudication of her
claims against the IAAF, (2) the Amateur Sports
Act does not preempt all state-law claims by a
participating athlete against the USOC, and (3)
her complaint adequately alleges RICO violations.
For the reasons stated herein, we affirm the
decision of the district court.

I.  BACKGROUND

    In the course of her storied career, middle-

distance runner Mary Decker Slaney has captured a multitude of United States and world records. She is considered by many to be one of the most celebrated female athletes of the past century, as well as one of the greatest runners of all-time. While Slaney began running in 1969, it was not until fifteen years later that she received international attention. At the 1984 Los Angeles Games, Slaney was considered a favorite to medal in the 3000 meters competition. While the world watched on, half-way through the race, Slaney began jostling for position with Zola Budd, a South African born, barefooted runner. When the pair became entangled, Slaney was tripped up by Budd. Slaney tumbled onto the infield, injuring her hip. As she crashed to the infield, any chance for an Olympic medal came crashing down with her. To this day, an indelible picture of Slaney, fallen on the side of the track and writhing in pain, remains in the minds of many who witnessed the event.

Slaney rebounded from her Olympic defeat and continued to compete, overcoming countless injuries. In June of 1996, she competed in the 5000 and 1500 meter races in the national trials for the Atlanta Olympics. Following her 5000 meter race, Slaney provided the USOC/1 with a urine sample which was tested for prohibited substances including exogenous testosterone. Because current technology cannot detect the presence of prohibited testosterone in the body, testing programs measure the ratio of testosterone to epitestosterone ("T/E") in the body. This test, referred to as the T/E test, assumes that an ordinary T/E ratio in humans is one to one, and thus any ratio of above six to one is consistent with "blood doping." The ratio was established at six to one in order to account for non-doping factors that might cause elevated ratios in female athletes. Factors which may influence T/E ratio include an individual changing birth control pills, age, menstrual cycle, bacterial contamination of the urine sample, and alcohol use.

Slaney's test was conducted at the University of California at Los Angeles ("UCLA") Laboratory. The test revealed that Slaney's T/E ratio was elevated significantly beyond the permitted six to one ratio./2 The laboratory notified both the USOC and the IAAF/3 of its findings. According to Slaney, the USOC informed United States of America Track and Field, Inc. ("USATF")/4 of its mandatory duty to investigate whether Slaney's specimen should be declared positive for testosterone. However, it appears that the USATF played no such role, as the actual investigation was conducted by the IAAF. The IAAF's investigating doctor analyzed Slaney's samples,

her past test results, and two additional samples. Slaney claimed that her elevated level was the result of (1) her menstrual cycle, and (2) her changing of birth control pills. Furthermore, Slaney posited that there was no scientific validity to the hypothesis that a T/E ratio above six to one was not normal for female athletes. Nonetheless, on February 5, 1997, the IAAF adopted the investigating doctor's recommendation and found Slaney's specimen positive for the prohibited substance testosterone.

As a result of the IAAF's decision, IAAF and USOC rules required the USATF to hold a hearing to determine whether Slaney had committed a doping offense. Slaney asked the USATF Custodial Board to dismiss her case, and also filed a complaint with the USOC under its rules. The USOC complaint alleged that the USATF proceedings against her violated the Amateur Sports Act as well as the USOC Constitution and By-Laws. Specifically, the complaint alleged that the use of the T/E test on female athletes had not been scientifically validated, that the test discriminated against women by shifting the burden to an athlete to prove by clear and convincing evidence that she was innocent, and that the IAAF had failed to conduct a proper investigation.

Concerned with the dilatory nature of the USOC and the USATF proceedings, on June 10, 1997, the IAAF suspended Slaney on an interim basis. The suspension occurred just prior to the National Track and Field Championships in Indianapolis. Furthermore, the IAAF ensured compliance with the suspension by invoking its contamination rule, whereby anyone who competed with a suspended athlete (in this instance Slaney) would themselves be suspended. The IAAF's actions prompted the USATF Custodial Board to suspend Slaney pending a hearing before the USATF Doping Hearing Board, effectively mooting her motion to dismiss the case against her.

Slaney received her hearing before the USATF Doping Hearing Board on September 14, 1997. The Hearing Board, unpersuaded by the testimony of the IAAF's investigating doctor, unanimously determined that no doping violation had occurred. Satisfied with the USATF Hearing Board's finding that the IAAF's rules regarding the use of the T/E ratio test were vague and inconsistent and the six to one ratio was not scientifically proven to be inconsistent with the normal ratio in humans, Slaney withdrew her complaint with the USOC.

The IAAF was unsatisfied with the USATF Hearing

Board's findings, and invoked arbitration of the USATF's decision./5 Slaney and the USATF opposed arbitration, but both were represented before the IAAF Arbitral Panel ("the Tribunal"). In late January 1999, the Tribunal issued an interlocutory decision upholding the IAAF's interpretation of how to adjudicate a testosterone doping offense, and found that the rules were neither vague nor inconsistent. Thus, once the IAAF showed that Slaney had a T/E ratio greater than six to one, Slaney had to come forth and show by clear and convincing evidence that the elevated ratio was attributable to a pathological or physiological condition. Believing that it was scientifically impossible to prove by clear and convincing evidence that her high T/E ratio was due to pathological or physiological factors, Slaney withdrew from the arbitration, followed by the USATF. Ultimately, the Tribunal ruled that Slaney had committed a doping offense.

Slaney filed suit in the District Court for the Southern District of Indiana raising numerous state-law contract and tort claims against both the IAAF and the USOC. Slaney also alleged that the organizations had violated the RICO Act, 18 U.S.C. sec. 1961 et seq. On November 5, 1999, the district court entered a judgment and order dismissing Slaney's state-law claims against the IAAF and USOC pursuant to Fed.R.Civ.P. 12(b)(1), and dismissing Slaney's 18 U.S.C. sec.sec. 1962(c) and (d) claims pursuant to Fed.R.Civ.P. 12(b)(6). Specifically, the district court held that the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. sec. 201 ("New York Convention"), barred Slaney's claims against the IAAF, as those claims had been the subject of a valid arbitration decision. With regard to Slaney's claims against the USOC, the court held that the Amateur Sports Act, 36 U.S.C. sec. 220501 et seq., gives the USOC the exclusive right to determine disputes over eligibility and does not create a private right of action. Finally, while the court held a RICO claim could theoretically be maintained against the USOC, Slaney's complaint did not "come close to fitting the family of claims Congress intended the RICO statute to cover," nor did it adequately allege a violation of the RICO conspiracy provision.

Slaney now appeals the decision of the district court. She contends that (1) the New York Convention does not bar her claims against the IAAF, (2) the Amateur Sports Act does not preempt all state-law claims made by an athlete against the USOC, and (3) her complaint adequately alleges a RICO claim against the USOC.

II. DISCUSSION
A. State-Law Claims Against the IAAF

Slaney's first contention on appeal is that the district court erred in dismissing her claims against the IAAF pursuant to Fed.R.Civ.P. 12(b)(1). The district court determined that the IAAF arbitration decision was covered by the New York Convention. As such, the district court could not entertain claims that would "undermine or nullify the Tribunal's decision." The court concluded that Slaney's present claims were sufficiently related to the subject matter of the arbitration decision so as to pose a barrier to federal jurisdiction under Rule 12(b)(1), and further held that none of the New York Convention defenses towards enforcement of foreign arbitration awards applied to Slaney's situation. In her present appeal, Slaney challenges the district court's decision dismissing her IAAF claims, arguing that (1) Slaney is not subject to the New York Convention, in that she has never agreed-- in writing or by actions--to arbitrate all disputes with the IAAF; (2) the claims raised in Slaney's complaint are separate and distinct from the matter decided by the IAAF; and (3) she has defenses under the New York Convention that preclude enforcement of the IAAF arbitration award against her.

A district court's dismissal of a complaint under Fed. R.Civ.P. 12(b)(1) is a legal determination which we review de novo. See Massey v. Wheeler, 221 F.3d 1030, 1034 (7th Cir. 2000). According to 9 U.S.C. sec. 201, the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (New York Convention) shall be enforced in the United States courts. Article II of the Convention speaks to the requirements of states that have signed on to the Convention. Specifically, the section states that "[e]ach Contracting State shall recognize an agreement in writing under which the parties undertake to submit to arbitration all or any differences which have arisen or which may arise between them in respect of a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration." Furthermore, the article requires that "[t]he court of a Contracting State, when seized of an action in a matter in respect to which the parties have made an agreement within the meaning of this article, shall, at the request of one of the parties, refer the parties to arbitration, unless it finds that the said agreement is null and void, inoperative or incapable of being performed." If an award has been rendered, that award must be enforced unless the party against whom enforcement is sought presents evidence that one of the limited defenses enumerated under

Article V of the Convention is applicable. For purposes of this appeal, we note that both the United States and Monaco are signatories to the Convention, such that the United States is bound to enforce arbitral awards validly rendered in that country.

In analyzing the merits of Slaney's appeal, we proceed in a systematic fashion. First, we must examine the decision rendered by the IAAF arbitration panel and determine the specific findings made by that Tribunal. Second, we shall examine the state-law causes of action that Slaney now brings against the IAAF in her complaint to the district court, and determine whether in fact those claims seek relitigation of an issue determined by the arbitration. If we determine that adjudication of Slaney's present claims would necessitate a reexamination of matters decided by the arbitration decision, we must resolve whether the arbitration decision, which took place on foreign soil, should be recognized by the courts, and thus deprive us of subject-matter jurisdiction over the present claims. Finally, assuming that we are theoretically obligated to recognize the decision of the Tribunal, we must inquire whether any defense to enforcement is applicable.

1. Decision of the Tribunal

The April 25, 1999 opinion of the IAAF arbitral panel begins by expounding on the reasoning behind its interlocutory opinion. Setting forth the evidentiary procedure, the Tribunal notes that the initial burden of proof rests with the IAAF to show that an athlete has a T/E ratio greater than the 6:1 established limit. If the IAAF can do so, according to the Tribunal, the Federation has provided sufficient evidence for the sample to be deemed positive. At that point, the burden is shifted to the athlete, who must prove by clear and convincing evidence that the elevated T/E ratio was due to pathological or physiological conditions. In making this analysis, the Tribunal drew from the IAAF rules on testing for testosterone.

With the evidentiary procedure established, the Tribunal continued to consider whether Slaney had committed a doping offense. The Tribunal noted that the IAAF had established that both of Slaney's specimens had been analyzed as having T/E ratios significantly higher than 6:1. The tribunal also observed that Slaney's longitudinal study revealed a previous T/E ratio high of 3:1; meaning that her present ratio, by the most modest of calculations, was more than three times greater than she had ever previously tested. Thus the burden was shifted to Slaney to produce a

valid explanation for the findings. The Tribunal noted that Slaney had produced no evidence, let alone that of a clear and convincing nature, to prove that her elevated ratio was the result of pathological or physiological factors. Since Slaney had withdrawn from the proceedings, and refused to tender her medical records to the Tribunal, the panel was forced to conclude under the burden-shifting procedure it had outlined that Slaney was guilty of a doping offense on June 17, 1996.

2. Slaney's Present Complaint and its Relationship to the Tribunal's Decision

Keeping in mind the orbit of the Tribunal's decision, we now turn to examine Slaney's present state-law causes of action against the IAAF. Slaney raises six such claims: breach of contract, negligence, breach of fiduciary duty of good faith and fair dealing, fraud, constructive fraud, and negligent misrepresentation. Putting aside Slaney's amorphous allegations of misrepresentations, we note that her complaints center around the claim that the IAAF violated its obligations to Slaney by "using the T/E ratio as a proxy for doping in women." Thus, she alleges that the Federation failed to properly investigate her urine sample. Though Slaney does not specify how she was damaged by the implementation of the T/E test (for reasons that will become pellucid during our discussion of Slaney's state-law claims against the USOC), the answer is apparent. The implementation by the IAAF of a burden-shifting approach to proving ingestion of testosterone damaged Slaney in that, as a result, she was unable to disprove that she had committed the offense--resulting in her suspension./6

We conclude that Slaney's present complaint seeks to address issues decided by the Tribunal. During the course of the IAAF arbitration, Slaney presented two positions: (1) that the IAAF's T/E ratio test for determining ingestion of exogenous testosterone was invalid, and (2) that it could not be proven that Slaney had committed a doping violation. Though Slaney attempts to limit the import of the Tribunal's decision, characterizing that decision as merely a finding that she had a T/E ratio above 6:1, it is incontrovertible that the arbitration panel went further, first upholding the T/E ratio test, and then determining that Slaney had committed a doping offense. As our inquiry above made transparent, Slaney's state-law claims against the IAAF seek deliberation on the identical issues. For example, in order to adjudicate whether Slaney's Fifth Count (negligence against the IAAF) is a valid claim, the court would be required to delve

into whether the cause of action makes the prima facie case. That probing would require that the court assess whether the IAAF in fact breached its obligations to Slaney. Slaney claims that the IAAF had a duty to properly test her for drug use. Since Slaney asserts that the IAAF breached this duty by employing the T/E test, the court would de facto be required to determine whether the implementation of that test constituted a breach of the duty to properly test athletes. Of course, the court could not reach that decision without addressing the validity of the test itself. Likewise, any examination of damages would require an assessment of whether Slaney was properly found guilty of a doping offense. Thus, we accept the district court's finding that allowing Slaney's current action would undermine or nullify the Tribunal's decision. See Rudell v. Comprehensive Accounting Corp., 802 F.2d 926, 928 (7th Cir. 1986).

3.  Application of The New York Convention

Having determined that Slaney's current complaint seeks to relitigate issues previously determined by the arbitration, we now turn to the critical issue of whether we are required to acknowledge the foreign arbitration decision. If we are, then unless Slaney can present a defense to enforcement, we cannot exercise subject-matter jurisdiction over her present claims, as that would require prohibited relitigation of previously decided issues.

Slaney's primary contention in this regard is that the arbitration between herself and the IAAF need not be enforced by federal courts in that it did not satisfy the requirements of the New York Convention. First, Slaney points out that there is no agreement in writing between her and the IAAF in which she agreed to submit her claims to arbitration. Since the New York Convention states that "[e]ach Contracting State shall recognize an agreement in writing under which the parties undertake to submit to arbitration all or any differences which . . . may arise between them in respect of a defined legal relationship," the absence of such an agreement would allow relitigation of matters decided in that arbitration. Furthermore, Slaney puts forth that even if the Tribunal's decision is recognized, that does not influence her present case, as she was not a party to the arbitration. The IAAF counters that Slaney, by becoming a member of the USATF, agreed to abide by all IAAF rules. Included within those rules is the requirement that she arbitrate all disputes with the IAAF. If the requirement of an agreement in writing is applicable, the IAAF suggests that Slaney's written agreement with the IAAF satisfies the

requirement. Alternatively, the IAAF posits that the "agreement in writing" requirement of Article II of the New York Convention is immaterial in this instance, as the IAAF is not seeking to force Slaney to arbitrate her claims, but rather arguing that her present claims have already been decided by an arbitration. Additionally, because the IAAF suggests that Slaney participated in the IAAF arbitration, she cannot now raise the procedural defense of lack of an arbitration agreement.

Whether Slaney's written agreement to follow the rules of the USATF would satisfy the requirement of an agreement in writing for purposes of enforcing an arbitration agreement with the IAAF is a question we need not resolve. Instead, we direct our inquiry to whether Slaney was a party to the IAAF arbitration, and what results flow from that fact. An examination of Slaney's actions following the IAAF's submission of the matter to the Tribunal leads to only one conclusion: Slaney was a participant in the arbitration. During the arbitration, Slaney's counsel appeared before and presented arguments to the Tribunal. Her counsel called an expert witness to testify on Slaney's behalf, filed a motion to dismiss, and a motion for summary judgment. Furthermore, Slaney's counsel moved for an interlocutory ruling regarding the burden of proof the Tribunal would apply. Given this level of participation, the district court was correct to reject Slaney's contention that she was merely an interested athlete in the proceedings.

Assuming that this case had come to the district court and the IAAF had sought to compel Slaney to arbitrate her claims, a determination as to whether there had been a writing might pose a barrier to the IAAF's position. However, that is not the case. Here, an arbitration has already taken place in which, as we have determined, Slaney freely participated. Thus, the fact that Slaney suggests there is no written agreement to arbitrate, as mandated by Article II of the New York Convention is irrelevant. See e.g., Coutinho Caro & Co., U.S.A., Inc. v. Marcus Trading Inc., Nos. 3:95CV2362 AWT, 3:96CV2218 AWT, 3:96CV2219 AWT, 2000 WL 435566 at *5 n.4 (D. Conn. March 14, 2000) (recognizing a difference between the situation where a party seeks to compel arbitration and a situation in which one attempts to set aside an arbitral award that has already been issued). What is highlighted here is the difference between Article II of the Convention, which dictates when a court should compel parties to an arbitration, and Article V, which lists the narrow circumstances in which an arbitration decision between signatories to the Convention should not be enforced.

We see no reason why, even in the absence of a writing, ordinary rules of contract law should not apply. The Second Circuit, in Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc., 198 F.3d 88, 96-97 (2d Cir. 2000), cert denied 2000 WL 693555 (Oct. 2, 2000), noted that non-signatories to an arbitration agreement may nevertheless be bound according to ordinary principles of contract and agency, including estoppel. Our judicial system is not meant to provide a second bite at the apple for those who have sought adjudication of their disputes in other forums and are not content with the resolution they have received. Slaney had the opportunity to show that she had never agreed to arbitrate the dispute when she was notified of the arbitration, but she let that opportunity pass. Slaney could not "sit back and allow the arbitration to go forward, and only after it was all done . . . say: oh by the way, we never agreed to the arbitration clause. That is a tactic that the law of arbitration, with its commitment to speed, will not tolerate." Comprehensive Accounting Corp. v. Rudell, 760 F.2d 138, 140 (7th Cir. 1985). "If a party willingly and without reservation allows an issue to be submitted to arbitration, he cannot await the outcome and then later argue that the arbitrator lacked authority to decide the matter." AGCO Corp. v. Anglin, 216 F.3d 589, 593 (7th Cir. 2000). Thus, we find that the Tribunal's decision must be recognized by this court, and unless a defense is present, must bar her present claims.

4.  New York Convention Defenses

Slaney alternatively suggests that even if we are to determine that she is bound by the arbitration panel's decision, the New York Convention provides exceptions in which a court need not enforce a foreign arbitral decision, and that those defenses to enforcement are applicable to the Tribunal's decision.

The first such defense raised by Slaney is that the Tribunal's decision should not be enforced because she was denied the opportunity to present her case. Slaney contends that under the IAAF rules, the IAAF has the burden of proving beyond a reasonable doubt that a doping offense has occurred. Her defense, she puts forth, was that the IAAF could not scientifically prove beyond a reasonable doubt that any prohibited substance was in her urine. Thus, when the Tribunal concluded it was bound by the IAAF's position-- that upon a showing that an athlete had a T/E ratio greater than 6:1 the burden shifted to the athlete to show by clear and convincing evidence that the elevated ratio was due to a pathological

or physiological condition--the Tribunal in effect denied Slaney a meaningful opportunity to present her case.

Article V(1)(b) of the New York Convention states that recognition and enforcement of an award may be refused if the party against whom it is invoked furnishes proof that it "was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case." (emphasis added). A court of appeals reviews a district court's decision confirming an arbitration award under ordinary standards: accepting findings of fact that are not clearly erroneous and deciding questions of law de novo. See First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 947-48, (1995); Generica Ltd. v. Pharmaceutical Basics, Inc., 125 F.3d 1123, 1129 (7th Cir. 1997). As we have noted, in order to comport with the requirement that a party to a foreign arbitration be able to present her case, we require that the arbitrator provide a fundamentally fair hearing. See Generica, 125 F.3d at 1130. A fundamentally fair hearing is one that "meets the minimal requirements of fairness--adequate notice, a hearing on the evidence, and an impartial decision by the arbitrator." Sunshine Mining Co. v. United Steelworkers, 823 F.2d 1289, 1295 (9th Cir. 1987) (internal citation omitted). Nevertheless, parties that have chosen to remedy their disputes through arbitration rather than litigation should not expect the same procedures they would find in the judicial arena. See Generica, 125 F.3d at 1130. Specifically, concerning evidentiary matters, the Supreme Court has noted that "[a]rbitrators are not bound by the rules of evidence." Bernhardt v. Polygraphic Co., 350 U.S. 198, 203-04 n. 4, (1956). The extent of an arbitrator's latitude is such that an "arbitrator is not bound to hear all of the evidence tendered by the parties. . . . [H]e must [merely] give each of the parties to the dispute an adequate opportunity to present its evidence and arguments." Generica, 125 F.3d at 1130 (citing Hoteles Condado Beach v. Union De Tronquistas, 763 F.2d 34, 39 (1st Cir. 1985)). It is when the exclusion of relevant evidence actually deprived a party of a fair hearing that it is appropriate to vacate an arbitral award. See id.

In Generica, we surveyed several cases in which an arbitrator's award was not enforced by the courts on the grounds raised now by Slaney. For example, in Tempo Shain Corp. v. Bertek, Inc., 120 F.3d 16, 21 (2d Cir. 1997), the court held that, under the FAA sec. 10(a), an arbitration panel's refusal to continue hearings to allow a witness to testify, the only witness with

evidence of fraud not found from other sources, was fundamental unfairness and misconduct sufficient to vacate the award. In Iran Aircraft Indus. v. Avco Corp., 980 F.2d 141, 146 (2d Cir. 1992), a court also vacated an arbitration award, in that instance because the tribunal changed evidentiary rules during the hearing and thus prevented a party from presenting its documentary evidence. See also Hoteles Condado, 763 F.2d at 40.) (vacating award when the arbitrator excluded the only evidence available to refute the claims); Hall v. Eastern Air Lines, Inc., 511 F.2d 663, 664 (5th Cir. 1975) (refusing to enforce an award because the arbitration board refused to give weight to a party's previously untendered alibi defense). Our examination of these cases leads us to conclude that Slaney's allegation has no merit. This defense to enforcement of a foreign arbitration need not apply when a panel employs a burden-shifting test in a fair manner. Slaney was not denied an opportunity to present her evidence. Rather, the arbitrator's decision merely maintained the same standard of proof the IAAF had always been guided by. As such, Slaney's complaint does not truly attack the procedure implemented by the arbitration panel, but rather an underlying evidentiary decision of the panel. Unfortunately for Slaney, as the Supreme Court has noted, arbitrators are not bound by the rules of evidence. Bernhardt, 350 U.S. at 203-04 n.4. Thus, this attempted defense must fail.

Slaney's final submission on this issue is that "presuming she had committed a doping offense based on a test that is scientifically invalid and discriminatory towards female athletes violated the 'most basic notions of morality and justice.'" Slaney further postulates that "eliminating the presumption of [her] innocence based upon her elevated T/E ratio also violates . . . explicit public policy that is well defined and dominant and is ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests."

According to Article V(2)(b) of the New York Convention, "[r]ecognition and enforcement of an arbitral award may also be refused if the competent authority in the country where recognition and enforcement is sought finds that: . . . [t]he recognition or enforcement of the award would be contrary to the public policy of that country." In Fotocrome, Inc. v. Copal Co., 517 F.2d 512, 516 (2d Cir. 1975), the Second Circuit noted that the public policy defense is exceedingly narrow. While Slaney states that the Tribunal's decision meets the stringent requirements of that case and others, in that the

Tribunal's decision violated the "most basic notions of morality and justice," id., and that enforcement would entail a violation of a paramount legal principle that is "ascertained by reference to the laws and legal precedents and from general considerations of supposed public interests," Industrial Risk Insurers v. M.A.N. Gutenhoffnungshutte GmbH, 141 F.3d 1434, 1445 (11th Cir. 1998) (internal quotations omitted), she provides little support for her contention.

Reduced to its essence, Slaney contends that the burden-shifting approach adopted by the IAAF violates United States public policy. We disagree. According to the parties, proving the presence of exogenous testosterone in the body by scientific tests is not possible at the present time. Therefore, the IAAF has adopted the rebuttable presumption of ingestion from a high T/E ratio in an athlete's urine, as detailed throughout this opinion. Were the IAAF not to make use of the rebuttable presumption, it would be nearly impossible, absent eyewitness proof, to ever find that an athlete had ingested testosterone. As the IAAF notes, criminal defendants are frequently required to come forward with proof establishing a basis for asserting affirmative defenses. See, e.g., Martin v. Ohio, 480 U.S. 228 (1987); Leland v. Oregon, 343 U.S. 790 (1952). We hope that at some juncture, science will develop a means for detecting exogenous testosterone in athletes, such that an athlete's T/E ratio of 11.6:1 can be discounted if it is based on innocent factors. However, until that point in time, we are confident that requiring an athlete to prove by clear and convincing evidence that her elevated ratio was due to pathological or physiological factors does not invoke a violation of United States public policy as federal case law has required in order for a court to refuse to enforce a foreign arbitral award.

Thus, having found that (1) Slaney participated in the IAAF arbitration, (2) her present state-law complaint seeks to relitigate issues decided by the IAAF Tribunal, (3) the New York Convention mandates enforcement of the arbitrator's decision, and (4) there is no defense that should bar enforcement of the arbitration decision, we find that the district court did not err in dismissing Slaney's state-law claims against the IAAF pursuant to Fed.R.Civ. P. 12(b)(1).

B.   State-Law Claims Against the USOC

Much as it does against the IAAF, Slaney's complaint alleges state-law violations against the USOC. And, much like it did with regard to the state-law claims against the IAAF, the

district court dismissed Slaney's state-law claims against the USOC, pursuant to Rule 12(b)(1). The district court granted USOC's motion to dismiss after determining that the Amateur Sports Act preempted Slaney's state-law claims against the Committee, and that the Act did not provide for a private right of action under which Slaney could seek to have those claims addressed by the district court. Slaney challenges the decision of the district court, arguing that the preemption doctrine does not apply in this arena, such that the Amateur Sports Act poses no jurisdictional barrier to the adjudication of Slaney's state-law claims against the USOC. Once again, we review a district court's dismissal of a complaint pursuant to Fed.R.Civ.P. 12(b)(1) de novo. See Massey, 221 F.3d at 1034.

We begin by noting that Slaney does not challenge the district court's statement that the Amateur Sports Act creates no private right of action. In fact, Slaney seeks to distance her case from those in which plaintiffs have attempted to bring suit under the Act. As stated in her appellate brief, "[n]or is Mrs. Slaney seeking to pursue a claim under the Amateur Sports Act. In many of the cases cited by the District Court, the plaintiffs asserted an implied right in the Amateur Sports Act to bring an action [to] enforce the USOC's obligations under the Act. Martinez v. USOC, 802 F.2d 1275, 1280 (10th Cir. 1987); Michels v. United States Olympic Committee, 741 F.2d 155, 156 (7th Cir. 1984); Oldfield v. Athletic Congress, 779 F.2d 505, 507 (9th Cir. 1985); DeFrantz v. United States Olympic Committee, 492 F. Supp. 1181, 1191 (D.D.C. 1980). Mrs. Slaney does not dispute the results in those cases; they are simply irrelevant." Thus, we concentrate our inquiry on the issue of whether the Amateur Sports Act precludes the court from examining Slaney's state-law claims.

According to the Amateur Sports Act, one of the purposes of the USOC is to exercise exclusive jurisdiction over all matters pertaining to United States participation in the Olympic Games. See 36 U.S.C. sec. 220503(3). The Act also states that the USOC is designed "to provide swift resolution of conflicts and disputes involving amateur athletes, national governing bodies, and amateur sports organizations," and "to encourage and provide assistance to amateur athletic activities for women." Id. at sec.sec. 220503(8), 220503(12).

Beginning with the often quoted language from the concurrence in Michels v. United States Olympic Committee, the district court reiterated

that "there can be few less suitable bodies than the federal courts for determining the eligibility, or procedures for determining the eligibility, of athletes to participate in the Olympic Games." 741 F.2d 155, 159 (7th Cir. 1984) (Posner, J., concurring). From there, the court cited numerous cases which have adopted the principle that eligibility decisions fall within the USOC's exclusive jurisdiction over all matters pertaining to United States participation in the Olympic Games. For example, in Dolan v. United States Equestrian Team, Inc., 257 N.J. Super. 314, 608 A.2d 434, 437 (App. Div. 1992), the court focused on the need for uniformity in determining questions of eligibility, and held "that it would be inappropriate to attribute different or unique meanings to [the Amateur Sports Act's] provisions in New Jersey and thus create a jurisdictional sanctuary from the Congressional determination that these types of disputes should be resolved outside the judicial processes." Similarly, in Walton-Floyd v. United States Olympic Committee, 965 S.W.2d 35, 40 (Tex. Ct. App. 1998), the court noted that "[t]he interest of maintaining consistent interpretations among jurisdictions requires the Act to pre-empt claims asserted under state tort law. To hold a common law duty exists outside the scope of the Act, thereby enabling an individual athlete to bring suit, threatens to override legislative intent and opens the door to inconsistent interpretations of the Act." We agree with the district court and the courts in Dolan and Walton-Floyd that strict questions of athletes' eligibility are preempted by the Amateur Sports Act's grant of exclusive jurisdiction to the USOC over all matters pertaining to United States participation in the Olympic Games. However, that conclusion does not end our analysis.

Despite the fact that the district court specifically noted its ruling was not based on a finding that the Amateur Sports Act was a complete preemption to all state-law claims, Slaney devotes an ample portion of her brief to arguing that the complete preemption doctrine should not be applied in this context. There is no disagreement that state-law causes of action can be brought against the USOC. However, when it comes to challenging the eligibility determination of the USOC, only a very specific claim will avoid the impediment to subject matter jurisdiction that sec. 220503(3) poses.

In Foschi v. United States Swimming Inc., 916 F. Supp. 232 (E.D.N.Y. 1996)--a case relied upon by Slaney for the proposition that the Amateur Sports Act does not create complete preemption-- the court addressed issues of federal

jurisdiction in the context of state-law claims against the USOC, and other amateur athletic organizations. While the district court did not dismiss those claims as being preempted by the Amateur Sports Act, that decision can be understood by examining the claims alleged. There, the plaintiff alleged that her contractual due process right was violated when United States Swimming, among other things, contravened its own rules. See id. at 237. While there is no dispute that the USOC has exclusive jurisdiction when it comes to eligibility determinations, the courts can still play a role in ensuring that the organization follows its rules for determining eligibility. The extent of the courts' powers in this area was previously examined by way of a suit brought by an athlete who captured the world's attention for reasons other than her competitive achievements. In Harding v. United States Figure Skating Ass'n, 851 F. Supp. 1476, 1479 (D. Or. 1994) vacated on other grounds, 879 F. Supp. 1053 (D. Or. 1995), the court defined (we believe correctly) the limited role that federal courts should play in eligibility determinations. There, the court cautioned that "courts should rightly hesitate before intervening in disciplinary hearings held by private associations . . . . Intervention is appropriate only in the most extraordinary circumstances, where the association has clearly breached its own rules, that breach will imminently result in serious and irreparable harm to the plaintiff, and the plaintiff has exhausted all internal remedies." Yet, while carving out this limited exception to the preemption created by the Amateur Sports Act, the opinion forewarned that while examining whether internal rules had been complied with, the courts "should not intervene in the merits of the underlying dispute." Id.

With this understanding of the limits of preemption, we turn to Slaney's claims against the USOC. Slaney suggests that nothing in the Act precludes her from bringing her state-law claims regarding the USOC's administration of its drug testing program, and specifically "the unlawful manner in which the USOC conducts its doping program." Based on our analysis above, we disagree. An inspection of the state-law claims that Slaney brings against the USOC reveals that, despite her best efforts to suggest to the contrary, Slaney is challenging the method by which the USOC determines eligibility of its athletes. Slaney's first state-law cause of action against the USOC is a breach of contract claim. Slaney suggests that the USOC violated its contractual obligations to Slaney by which she suffered damages. While Slaney attempts to skirt the issue, what she is actually alleging is that

she was injured by the USOC's determination that she was ineligible to compete. Similarly, Slaney's negligence claim against the USOC posits that the USOC breached a duty to Slaney by using the T/E ratio as a proxy for doping, and that as a result Slaney was damaged. Slaney's other state-law claims are no different. Examination of any of those claims would require an Article III court to examine as an underlying issue the validity of the T/E test, an endeavor we cannot partake in.

We note that throughout her complaint Slaney attempts to avoid any mention of the fact that her damages arise from the USOC's determination regarding her eligibility. We assume that such a tactic is a recognition of what we have already stated: the USOC has exclusive jurisdiction, under the Amateur Sports Act, to determine all matters pertaining to eligibility of athletes. Yet, Slaney cannot escape the fact that her state-law claims, whether framed as breach of contract, negligence, breach of fiduciary duty, fraud, constructive fraud, or negligent misrepresentation, are actually challenges to the method by which the USOC determines eligibility of athletes. Slaney does not suggest that the organization contravened its own guidelines, and as Slaney freely admits, the Amateur Sports Act creates no private cause of action. Thus, the district court was correct in determining that it lacked subject matter jurisdiction over Slaney's state-law claims against the USOC and thus in dismissing those causes of action pursuant to Fed.R.Civ.P. 12(b)(1).

C. RICO Claims

Slaney's final contention on appeal is that the district court erred in dismissing her RICO claims against the USOC./7 In her complaint, Slaney alleges that the USOC conducted and continues to conduct the drug testing affairs of the "Olympic Movement" through a pattern of racketeering activity. Slaney puts forth that the Olympic Movement is the principal international association of sports organizations and persons. The Movement, which she posits operates under the supreme authority of the International Olympic Committee ("IOC"), is comprised of the international federations, national Olympic committees, organizing committees of the Olympic games, national associations, clubs and the athletes. According to the complaint, the Movement's drug testing program "is a fraud, designed in principal if not exclusive part to protect the commercial value of the Olympic and subsidiary organizations' properties and their product." The district court, relying in part on our decision in Fitzgerald v. Chrysler Corp., 116

F.3d 225 (7th Cir. 1997), determined that Slaney's claim against the USOC "does not come close to fitting the family of claims Congress intended the RICO statute to cover." Thus, the court dismissed Slaney's 18 U.S.C. sec. 1962(c) claim. The court also held that Slaney had failed to allege a violation of the RICO conspiracy provision, and that hence she had failed to state a proper claim under 18 U.S.C. sec. 1962(d).

We review a district court's dismissal of a complaint pursuant to Fed.R.Civ.P. 12(b)(6) de novo, and accept all factual allegations in the complaint and draw all reasonable inferences from those facts in favor of the plaintiff. See Stachon v. United Consumers Club, Inc., 229 F.3d 673, 675 (7th Cir. 2000). However, the court is not required to ignore facts alleged in the complaint that undermine the plaintiff's claim. See Arazie v. Mullane, 2 F.3d 1456, 1465 (7th Cir. 1993). In evaluating the dismissal of Slaney's complaint, we examine the complaint as a whole and will affirm the district court's order of dismissal only if it appears beyond doubt that Slaney can prove no set of facts in support of her claim which would entitle her to relief. See Walker v. Wallace Auto Sales, Inc., 155 F.3d 927, 930 (7th Cir. 1998) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). Furthermore, allegations of fraud in a civil RICO complaint are subject to the heightened pleading standard of Fed.R.Civ.P. 9(b), which requires a plaintiff to plead all averments of fraud with particularity. See Goren v. New Vision Int'l, Inc., 156 F.3d 721, 726 (7th Cir. 1998). Accordingly, a RICO plaintiff must, at a minimum, describe the two predicate acts of fraud with some specificity and state the time, place, and content of the alleged false representations, the method by which the misrepresentations were communicated, and the identities of the parties to those misrepresentations. See id. at 726, 728-29; see also, Lachmund v. ADM Investor Serv., Inc., 191 F.3d 777, 784 (7th Cir. 1999). Finally, an appellate court may affirm the district court's dismissal on any ground supported by the record, even if different from the grounds relied upon by the district court. See Triad Ass'n v. Chicago Hous. Auth., 892 F.2d 583, 594 (7th Cir. 1989).

1. Sufficiency of Allegations Under sec. 1962(c)

In order to state a viable cause of action under sec. 1962(c), a plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. See Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 496 (1985)./8 Taking the facts alleged in Slaney's complaint as true (without vouching for their

truth), the USOC is the domestic representative or agent of the IOC and is responsible for carrying out the mission of the IOC and the Olympic Movement. The USOC is subject to the IOC's drug testing program, which it carries out in the United States, and is a member of the Olympic Movement. Finally, the Olympic Movement is subject to the supreme authority of the IOC. Thus, Slaney posits, the USOC are "persons" associated with the "enterprise" that is the Olympic Movement.

Slaney's RICO claim against the USOC is legally insufficient for a number of reasons. As the district court did, we will first examine whether Slaney's complaint satisfies the conduct prong of a 1962(c) cause of action./9 According to the Supreme Court, in order to have conducted or participated in the enterprise's affairs under sec. 1962(c), the person charged must have had some part in directing those affairs. See Reves v. Ernst & Young, 507 U.S. 170, 179 (1993). "In other words, she must have participated in the operation or the management of the enterprise itself, and she must have asserted some control over the enterprise." United States v. Swan, 224 F.3d 632, 635 (7th Cir. 2000). Slaney suggests that because the USOC is responsible for administering the drug testing program in the United States, that the USOC conducts the affairs of the enterprise. While Slaney is correct that sec. 1962(c) does not require the individual (here, the USOC) to have absolute domination over the enterprise (in this instance, the Olympic Movement), RICO does require that the person have had some control over the enterprise itself. See Swan, 224 F.3d at 635.

Slaney's complaint fails to allege that the USOC exerts any control over the Olympic Movement. In fact, Slaney's description of the Olympic Movement suggests a structure in which the USOC could not have directed the enterprise's affairs. The complaint suggests the Movement as operating "under the supreme authority of the IOC" which has sole responsibility for allowing members into the Movement. The USOC is described as merely a "domestic representative or agent . . . responsible for carrying out the mission of the IOC." The complaint is devoid of any suggestion that as an agent, the USOC took part in managing the Movement.

At best, Slaney has alleged that the USOC has been delegated the authority by the Movement to conduct the drug testing program in the United States. However, as we have made patent, "simply performing services for an enterprise, even with knowledge of the enterprise's illicit nature, is not enough to submit an individual to RICO

liability under sec. 1962(c)." Goren, 156 F.3d at 728. Rather, we require that "the defendant must participate in the operation or management of the enterprise." Id. at 727. Slaney's complaint contains no allegation that the USOC, as an individual, had any control over the enterprise itself. While Slaney suggests such lack of control is "besides the point," the Supreme Court has held to the contrary. See Reves, 507 U.S. at 179. We cannot draw the conclusion that USOC's control over one aspect of the Olympic Movement's activities in this country translates into the USOC having had control over the Movement as an enterprise. Simple exertion of control over one aspect of an enterprise's activities does not evince control over the enterprise itself.

Even if Slaney's complaint could be read to allege that the USOC took some part in directing the Olympic Movement's affairs, it fails (as the district court noted) to satisfy the pattern requirement of 1962(c) because it fails to plead sufficient facts to show that the USOC engaged in a pattern of racketeering activity. As stated above, a pattern of racketeering activity consists, at a minimum, of two predicate acts of racketeering (committed within a ten-year time period). See Goren, 156 F.3d at 728. Here, Slaney advances the predicate acts of mail and wire fraud. See 18 U.S.C. sec.sec. 1341, 1343. As we noted earlier, a plaintiff alleging predicate acts of mail and wire fraud must do so with particularity. See Fed.R.Civ.P. 9(b). In order to satisfy this standard, a RICO plaintiff must allege the identity of the person who made the representation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff. See Vicom, Inc. v. Harbridge Merchant Serv., Inc., 20 F.3d 771, 777 (7th Cir. 1994). Moreover, because a RICO plaintiff must allege two predicate acts of fraud, she must satisfy the requirements of Rule 9(b) twice. See Emery v. American Gen. Fin., Inc., 134 F.3d 1321, 1323 (7th Cir. 1998).

After examining Slaney's complaint, we find that she has failed to allege a pattern of racketeering activity with sufficient particularity to satisfy the requirements of Rule 9(b). Slaney's complaint asserts that the USOC "used and continues to use the mails and wires to convey their false and deceptive communications to and about Mrs. Slaney, which communications were and continue to be an integral component of the fraudulent scheme." To satisfy the particularity requirements of Rule 9(b), Slaney suggests that we examine paragraphs 1-104 of her complaint./10 A perusal of the complaint convinces this Court that Slaney has not alleged

two predicate acts. According to Slaney, the USOC informed the USATF that it was mandatory for the USATF to conduct an investigation of Slaney's urine sample before she could be declared positive for prohibited testosterone. Slaney suggests that this information was first transmitted to the USATF on June 28, 1996 and then again two weeks later. As such, Slaney suggests that we find that the pattern requirement of RICO has been satisfied.

Slaney has not presented any case law, nor have we found any precedent for the proposition that a single fraudulent representation, reiterated once over a two-week period can constitute a pattern of racketeering for 1962(c) purposes. In Lipin Enterprises, Inc. v. Lee, 803 F.2d 322, 324 (7th Cir. 1986), we held that a single fraudulent scheme with only one injury to one victim was not a "pattern of racketeering activity" under sec. 1962(c) simply because it required several acts of mail and wire fraud to inflict the single injury. In so holding, we noted that mail fraud and wire fraud are perhaps unique among the various sorts of "racketeering activity" possible under RICO in that the existence of a multiplicity of predicate acts may be no indication of the requisite continuity of the underlying fraudulent activity. Thus, a multiplicity of mailings does not necessarily translate into a "pattern" of racketeering activity. See Lipin, 803 F.2d at 325; see also Ashland Oil, Inc. v. Arnett, 875 F.2d 1271, 1278-79 (7th Cir. 1989); Tellis v. United States Fidelity & Guar. Co., 826 F.2d 477, 478 (7th Cir. 1986) (multiple acts of mail fraud in furtherance of a single episode of fraud involving one victim and relating to one basic transaction cannot constitute the necessary pattern). Nor is the fact that Slaney suggests the USOC continues to conduct the drug testing program in the United States sufficient to plead the pattern requirement. "Indeed, we have repeatedly held that a plaintiff's conclusory allegations that 'defendants' also defrauded unidentified 'others' are not enough to plead the requisite pattern of fraud." Goren, 156 F.3d at 729. Because the single representation that the USATF would conduct the investigation into Slaney's urine sample is the only fraud alleged in the complaint, that complaint fails to state a claim under sec. 1962(c). Thus, the district court was correct when it noted that Slaney's claim does not come close to fitting the family of claims Congress intended the RICO statute to cover./11

2. Sufficiency of Allegations Under sec. 1962(d)

We have long recognized that sec. 1962(d)'s

target, like that of all provisions prohibiting conspiracies, is the agreement to violate RICO's substantive provisions, not the actual violations themselves. See Schiffels v. Kemper Fin. Servs., Inc., 978 F.2d 344, 348 (7th Cir. 1992)./12 Accordingly, it is the well-established law of this Circuit that an individual can be charged under sec. 1962(d) even if he personally does not agree to commit two predicate acts of racketeering. See Goren, 156 F.3d at 731. "[T]he touchstone of liability under sec. 1962(d) is an agreement to participate in an endeavor which, if completed, would constitute a violation of the substantive statute." Id. at 732. Hence, in order to state a viable claim for conspiracy under sec. 1962(d), a plaintiff must allege that (1) the defendant agreed to maintain an interest in or control of an enterprise or to participate in the affairs of an enterprise through a pattern of racketeering activity, and (2) the defendant further agreed that someone would commit at least two predicate acts to accomplish those goals. Lachmund, 191 F.3d at 784.

Slaney's complaint did not allege a violation of the RICO conspiracy statute. Nonetheless, the district court was correct to address whether there had been a violation of that section of RICO. The fact that a complaint does not reference 1962(d) is no obstacle to our consideration of whether Slaney's complaint states a claim under sec. 1962(d) because under the notice pleading regime of the Federal Rules of Civil Procedure, plaintiffs are not required to plead legal theories. See Goren, 156 F.3d at 730 n.8. "Instead of asking whether the complaint points to the appropriate statute, a court should ask whether relief is possible under any set of facts that could be established consistent with the allegations." Bartholet v. Reishauser A.G. (Zurich), 953 F.2d 1073, 1078 (7th Cir. 1992).

Slaney's complaint is wanting for any allegation that the USOC agreed to violate RICO. As the district court noted, the closest the complaint comes to alleging any sort of agreement is in the statement that the USOC ordered the UCLA laboratory not to hand over to Slaney any information regarding the laboratory's analysis of her specimen. Yet, as the court noted, there is not even a hint that this command by the USOC was given with any motivation to participate in the fraudulent affairs of the Olympic Movement or an agreement to commit two predicate acts. Thus, Slaney results to bolstering her 1962(d) claim by introducing new evidence and drawing inferences from those materials that the USOC is engaging in a conspiracy to violate RICO. We have consistently frowned upon such essays to cure pleading deficiencies by means of introducing new

factual support in appellate briefs. Put simply, "the pleading itself must state the essential elements of the RICO action or it is worthy of dismissal." Richmond v. Nationwide Cassel L.P., 52 F.3d 640, 646 (1995). As a result, we find that Slaney has failed to sufficiently allege a RICO conspiracy.


III.  CONCLUSION

Slaney participated in a valid arbitration with the IAAF which, under the New York Convention, we are obligated to recognize. Thus, the issue decided in that arbitration cannot be relitigated. Because adjudication of the state-law claims alleged against the IAAF in Slaney's complaint would necessitate relitigation of the issue decided in the arbitration, the district court correctly determined that it lacked subject-matter jurisdiction over those claims. Likewise, the district court correctly determined that it lacked jurisdiction to adjudicate Slaney's state-law claims against the USOC, finding that those claims were preempted by Congress's grant of exclusive authority to the USOC to determine the eligibility of American athletes. Finally, the district court correctly determined that Slaney did not state a proper claim against the USOC for violation of the federal RICO statute.

For the foregoing reasons, we Affirm the decision of the district court.

/1 The USOC, located in Colorado Springs, Colorado, is the National Olympic Committee for the United States. This status dictates that the USOC carry out the mission of the International Olympic Committee ("IOC") and the Olympic Movement in this country. Because the IOC has promulgated a drug testing program, the USOC administers that program in the United States for all qualifying competitions for the Olympic Games.

/2 Specifically, Slaney's samples tested at ratios of 9.5:1 to 11.6:1.

/3 The IAAF is an unincorporated organization based out of Monaco, which was founded to coordinate and control track and field activities around the world. The IAAF, which has a membership of federations representing over 200 nations and territories, establishes worldwide rules for track and field competitions which are embodied in the IAAF Constitution and other regulations. Each federation governs track and field competitions within its own territory and has agreed with all other federations to follow IAAF rules in doing so.

/4 In addition to its Olympic duties, the USOC has been designated as the coordinating body for all amateur sports in this nation by the Ted Stevens Olympic and Amateur Sports Act ("Amateur Sports Act"), 36 U.S.C. sec. 220501 et seq. Under the Amateur Sports Act, the USOC is required to select a national governing body for each amateur sport. For track and field, the USATF, an Indianapolis corporation, has been designated as the governing body. As the national governing body, the USATF is subject to the Amateur Sports Act. Furthermore, the USATF is also a member of the IAAF, and is responsible for enforcing the IAAF's rules and regulations.

/5 Because of indications, during the late 1970's, that some national track and field federations were turning blind eyes to their athletes' drug abuse, the IAAF established worldwide testing procedures and eligibility rules. Rules 21-23 require all disputes between the IAAF and members to be submitted to an arbitration panel.

/6 We note that Slaney walks a tightrope throughout this portion of her appellate argument. On the one hand, in order to raise many of the causes of action she alleges, Slaney must establish that there is a contractual relationship between her and the IAAF. However, in order to maintain the action as a whole against the IAAF, Slaney must avoid any suggestion that she has a contractual relationship with the IAAF whereby she has agreed to abide by their rules, including those which compel arbitration of all disputes.

/7 The original RICO claim was brought against both the IAAF and the USOC. However, the district court only analyzed the claim as it pertained to the USOC, determining that the Tribunal's decision removed subject matter jurisdiction over Slaney's claim against the IAAF. On appeal, Slaney has not challenged the dismissal of the RICO claim against the IAAF, but rather only argues that the district court erred in misapplying the law with regard to the RICO claim against the USOC. We do note that by challenging the applicability of the New York Convention as a bar against her claims, Slaney has in fact challenged the foundation upon which the dismissal of her IAAF RICO claim was granted. However, because we determined above that the New York Convention does in fact preclude all of Slaney's claims against the IAAF, we need not further address the district court's decision regarding the IAAF RICO claim. Thus, as the district court did, we focus our inquiry on Slaney's RICO claim against the USOC.

/8 18 U.S.C. sec. 1962(c) provides:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

/9 Slaney suggests that because the district court focused on the conduct and pattern prongs of the RICO cause of action, that it presumably found the other elements adequately alleged. We disagree. Since a cause of action under 1962(c) requires four distinct elements, once the district court determined that Slaney's complaint did not adequately state a claim for relief because one of those elements was lacking, it was under no obligation to address the remaining elements. In this opinion, we do not address all four elements of a 1962(c) claim. However, by no means do we suggest that our silence on these elements indicates that we find them adequately alleged.

/10 We do not believe that in most cases it is proper for a plaintiff to attempt to satisfy the particularity requirement of 9(b) through an incorporation of the entire complaint into the RICO claim. In this instance, the 104 paragraphs in Slaney's complaint reference numerous mail and wire transactions, most of which were completely innocuous. Though we examined the alleged predicate acts contained in those paragraphs, we note that such a nebulous identification of predicate acts could be grounds enough to find that Slaney had failed to meet the particularity requirement of 9(b).

/11 We also entertain serious doubt as to whether Slaney has sufficiently alleged an enterprise, as required by 1962(c). Slaney's complaint has merely defined the enterprise through the manner in which it operates. But, "[t]his court has repeatedly stated that RICO plaintiffs cannot establish structure by defining the enterprise through what it supposedly does." Stachon, 229 F.3d at 676. Though a pattern of racketeering activity may be the means by which an enterprise interacts with society, it is not itself the enterprise, "for an enterprise is defined by what it is, not what it does." Jennings v. Emry, 910 F.2d 1434, 1440 (7th Cir. 1990).

/12 18 U.S.C. sec. 1962(d) provides that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section."