**DECATUR VENTURES, LLC,** an Indiana Limited Liability Company, and Trent D. Decatur, an individual, Plaintiffs,

Triage Realty Investment, Inc., an Indiana Corporation; Jamie K. Goetz, an individual; Tonya S. (Blythe) Harvey, an individual; and Mona Orkoulas, an individual, Intervenor Plaintiffs,

v.

**STAPLETON VENTURES, INC.,** an Indiana Corporation; Novastar Home Mortgage, Inc., a Delaware Corporation; Michael W. Stapleton, an individual; Courtenay Stocker, an individual; Phil Miller, an individual; Jeremy L. Stow, an individual; Michael L. Johnson, an individual; Lisa F. Phillips, an individual; and Kimberly Daniel, an individual, Defendants.

No. 1:04–CV–0562–JDT–WTL.

United States District Court,
S.D. Indiana,
Indianapolis Division.

March 21, 2005.

Matthew S. Tarkington, Wood Crapo LLC, Salt Lake City, UT, Hannah Kaufman, Peter S. French, Lewis & Kappes, Indianapolis, IN, for plaintiffs.

Terry L. Monday, Monday Rodeheffer Jones & Albright, Indianapolis, IN, for Stapleton Ventures, Inc., Michael W. Stapleton, defendants.

Steven Kenneth Huffer, Huffer & Weathers, Indianapolis, IN, for Courtenay Stocker, defendant.

Donald F. Foley, Jennifer S. Milligan, Robert M. Frye, Foley & Pool, LLP, Indianapolis, IN, for Phil Miller, Jeremy Stow, defendants.

Robert D. Zink, Goodin Abernathy & Miller, Indianapolis, IN, for Michael L. Johnson, defendant.

Gregory H. Coleman Clark Coleman & Freeman, Indianapolis, IN, for Lisa F. Phillips, defendant.

Michael W. Phelps, Kopka, Pinkus, Dolin & Eads, Indianapolis, IN, Bradley W. Skolnik, Stewart & Irwin, Indianapolis, IN, Andrew R. Wolf, Hunt Suedhoff Kalamaros, South Bend, IN, for Kimberly Daniel, defendant.

## ENTRY ON MOTIONS TO DISMISS FILED BY DEFENDANTS NOVASTAR HOME MORTGAGE, INC., COURTENAY STOCKER, PHIL MILLER, AND JEREMY STOW (DOCKET NOS. 97, 112)

TINDER, District Judge.

This case serves as yet another example of the great burden that is placed on the fair administration of justice when a plaintiff, under the protective guise of notice pleading, chooses to plead with volume rather than precision. When a party decides to throw a bucketful of claims against the wall in the hopes that some will stick, or simply repackages versions of the same claim over and over in redundant counts, not only is the court required to exert a great deal of time and effort into tidying up the matter, but the litigants themselves are left to endure the costs and delays in resolution caused by such cluttered tactics. No one wins when the practice of artful pleading falls by the wayside.

Plaintiffs Decatur Ventures, LLC ("DV"), and Trent D. Decatur filed an amended complaint against Defendants Stapleton Ventures, Inc. ("SVI"); NovaStar Home Mortgage, Inc. ("NovaStar"); Michael W. Stapleton; Courtenay Stocker; Phil Miller; Jeremy L. Stow; Michael L. Johnson; Lisa F. Phillips; and Kimberly Daniel. The amended complaint sets forth sixteen counts as follows: I: substantive and conspiratorial violations of the Racke-

teer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, by all Defendants; II: violations of Indiana's "baby RICO" statute by all Defendants; III: breach of contract by SVI; IV: breach of contract by NovaStar; V: negligence by SVI; VI: negligence per se by Stapleton (and/or SVI); VII: negligence by NovaStar; VIII: constructive and actual fraud by Stapleton (and/or SVI) and NovaStar; IX: civil deception by all Defendants; X: civil conversion by all Defendants; XI: check deception by SVI; XII: unjust enrichment by all Defendants; XIII: promissory estoppel against Stapleton; XIV: promissory estoppel against NovaStar; XV: request for an accounting of SVI; and XVI: negligence by Miller, Stow, Johnson, Phillips, and Daniel.

The RICO claims invoke federal-question jurisdiction, and the state law claims are supported by supplemental jurisdiction. On January 13, 2005, this court permitted Triage Realty Investment, Inc. ("Triage"), Jamie K. Goetz, Tonya S. (Blythe) Harvey, and Mona Orkoulas to intervene as Plaintiffs. This case is presently before the court on Fed.R.Civ.P. 12(b)(6) motions to dismiss filed by Defendants NovaStar, Stocker, Miller, and Stow.[1] After carefully reviewing all pleadings and briefs, the court finds as follows:

## I. BACKGROUND

Essentially, Plaintiffs claim that they were fraudulently induced into making investment purchases of residential real estate properties. The origins of this case can be traced to May 2003, when Plaintiff Trent D. Decatur and SVI entered into a joint business venture wherein SVI would seek out under-valued residential properties for purchase. SVI would then approach the owners of these properties and negotiate for their sale. Decatur, as buyer, would then enter into "Offer to Purchase Real Estate" agreements with each of the sellers. SVI would front the down payments for each of the purchases.

Over the course of four months, Decatur purchased a total of eight properties (hereinafter the "subject properties") under this basic arrangement. SVI planned to rehabilitate the subject properties, manage them, and find tenants willing to rent them. Decatur took out mortgage loans on the subject properties and was responsible for making all mortgage payments. To finance the monthly mortgage payments, Decatur would invoice SVI, and SVI would then reimburse him from the rent collected on the subject properties and pay him a percentage of the profits above the reimbursement figure, if any.

NovaStar, through its employee Courtenay Stocker, acted as mortgage broker for Decatur with respect to all of the subject properties. NovaStar's primary roles in this capacity were to order and obtain appraisals for each of the subject properties, assist Decatur in securing lenders for the mortgage loans, arrange for title work, and assist in the real estate closings. NovaStar's obligations to Decatur were set forth in two "Mortgage Loan Origination Agreements" dated June 6, 2003 and August 6, 2003.[2] Pursuant to those agreements, NovaStar arranged for appraisals on the subject properties for the purpose of helping Decatur obtain the necessary financing. The appraisals were obtained

---

**1.** NovaStar and Stocker filed a joint motion to dismiss (Docket No. 97), as did Miller and Stow (Docket No. 112). Though these are the only Defendants presently seeking a dismissal of the amended complaint, to the extent that any successful argument to dismiss a count can be applied to all Defendants named in that count, the count would be dismissed as to those Defendants.

**2.** These agreements contained identical terms.

from Defendants Miller, Stow, Johnson, Phillips, and Daniel (collectively, the "appraiser Defendants"). NovaStar allegedly "signed off" on the appraisals at the corresponding closings.

In November of 2003, Decatur began to perceive problems with his investment when Stapleton stopped payment on a check for that month's mortgage reimbursement. Decatur made inquires into Stapleton and SVI, but no further mortgage invoices were paid. Stapleton eventually told Decatur that he was no longer in the property management business.

At the heart of this matter are allegations that the subject properties were appraised at amounts far greater than their true market values, and that SVI failed to maintain or improve the properties in accordance with the parties' agreement. As a result, SVI failed to make any payments or reimbursements to Plaintiffs Decatur and DV, leaving them, much to their pecuniary harm, to satisfy the mortgage payments on all eight of the subject properties out of their own pockets. Intervenor Plaintiffs Triage, Goetz, Harvey, and Orkoulas claim to have been victimized by the same basic scheme as that alleged in Decatur and DV's amended complaint. The Intervenor Plaintiffs make allegations against many of the same Defendants named in Plaintiffs' amended complaint, but not all. Specifically, the Intervenor Plaintiffs name as Defendants only SVI, Stapleton, NovaStar, Stocker, Phillips, and Daniel.

## II. DISCUSSION

### A. Standard of Review

The purpose of a Rule 12(b)(6) motion to dismiss is to test the sufficiency of the complaint, not to resolve the case on the merits. *See* 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (3d ed.2004). Dismissal is appropriate only if " 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' " *Ledford v. Sullivan*, 105 F.3d 354, 356 (7th Cir.1997) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)). The court must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. *Hentosh v. Herman M. Finch Univ. Of Health Sciences/The Chicago Med. Sch.*, 167 F.3d 1170, 1173 (7th Cir.1999). Federal courts adhere to a notice pleading regime, and as such a plaintiff need not plead facts so long as the defendant has at least minimal notice of the claim or claims being asserted. Fed.R.Civ.P. 8; *Scott v. City of Chicago*, 195 F.3d 950, 951 (7th Cir.1999). That being said, "the court is not required to ignore facts alleged in the complaint that undermine the plaintiff's claim." *Slaney v. The Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 597 (7th Cir. 2001). In addition, allegations of fraud (including those in a civil RICO action) are subject to the heightened pleading standard of Fed.R.Civ.P. 9(b) that requires a plaintiff to plead all averments of fraud with particularity. *Id.*

### B. Federal RICO Claims

The Federal RICO statute prohibits various activities associated with the operation of an "enterprise" by means of a "pattern of racketeering activity." 18 U.S.C. § 1962(a)-(d). Plaintiffs in this case allege counts of substantive RICO violations based on § 1962(a) and § 1962(c).[3] A § 1962(a) violation "requires

---

**3.** Plaintiffs also allege conspiratorial RICO violations under 18 U.S.C. § 1962(d), which will be addressed *infra.*

'the receipt of income from a pattern of racketeering activity, and the use of that income in the operation of an enterprise.' " *Vicom, Inc. v. Harbridge Merch. Serv., Inc.*, 20 F.3d 771, 778 (7th Cir.1994). By contrast, § 1962(c) provides that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.…" Plaintiffs' claims under both § 1962(a) and § 1962(c) will now be addressed in turn.

### I. 18 U.S.C. § 1962(a)

█ A thorough review of Plaintiffs' amended complaint reveals that their claim for relief under § 1962(a) must be dismissed. Under that provision,

> It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity … in which such person has participated as a principal … to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment of operation of, any enterprise which is engaged in … interstate or foreign commerce.

18 U.S.C. § 1962(a). The majority of Courts of Appeals hold that a claim under this provision is insufficient if it attempts to plead an injury caused only by predicate racketeering acts. *See Vicom*, 20 F.3d at 778 n. 6. The Seventh Circuit has neither adopted nor rejected the majority position. *Id.* In *Vicom*, the Court stated as follows:

> [T]he issue of standing arises when a RICO plaintiff alleges that [§ 1962(a)] has been violated. Although our circuit has not addressed the issue to date, the majority of circuits hold that the *use or investment* of the racketeering income must proximately cause the plaintiff's injury; injury caused by the predicate

racketeering acts is inadequate. Moreover, the majority view is that the mere reinvestment of the racketeering proceedings into a business activity is not sufficient for § 1962(a) standing.

*Id.* (citations omitted) (emphasis added). Following *Vicom*, it appears that the majority of district courts within the Seventh Circuit kept with the majority of circuit courts and adopted the "use or investment rule" when evaluating claims under § 1962(a). *See Shapo v. O'Shaughnessy*, 246 F.Supp.2d 935, 965 (N.D.Ill.2002) (compiling cases). This court finds that trend to be well-reasoned, and will apply the use or investment rule in the instant case.

█ In Count I of their amended complaint, Plaintiffs Decatur and DV allege in a conclusory manner that the Defendants violated § 1962(a) by receiving income from a pattern of racketeering activity and invested that income in enterprises. (Am. Compl.¶ 74.) However, nowhere in the amended complaint do Plaintiffs describe how they were injured by the use or investment of racketeering income. The amended complaint simply repeats throughout its RICO allegations that the Defendants participated in a scheme to defraud Plaintiffs, and that such scheme was for the Defendants' economic benefit. At most—and even this is a stretch given the skeletal allegations in the amended complaint with respect to this issue—it appears that the Defendants are thought to have simply reinvested racketeering proceedings into an existing business activity. But that is not sufficient to sustain a viable § 1962(a) claim. *See Vicom*, 20 F.3d at 778 n. 6 (citing *Brittingham v. Mobil Corp.*, 943 F.2d 297, 305 (3d Cir. 1991), *abrogation on other grounds recognized by Jaguar Cars, Inc. v. Royal Oaks Motor Car Co., Inc.*, 46 F.3d 258 (3d Cir. 1995)). An inference can be drawn from the amended complaint that Defendants

SVI and/or Stapleton reimbursed Plaintiffs on at least some of the monthly mortgage invoices, and had Plaintiffs alleged that such action constituted a "reinvestment" of fraudulently obtained funds intended to deceive Plaintiffs into additional dealings with the Defendants, then perhaps this claim could persist. *See, e.g., Rose v. Mony Life Ins. Co.,* 82 F.Supp.2d 920, 924 (N.D.Ill.2000). But as the amended complaint presently stands, it is clear that the only injuries alleged to have been suffered by the Plaintiffs stem from purported predicate acts of fraud and not from the investment or use of racketeering funds. (Am.Compl.¶¶ 70–73.) Accordingly, Plaintiffs lack standing to bring a § 1962(a) claim, and to the extent Count I asserts such a claim, it must be **DISMISSED** as to all Defendants.

### ii. *18 U.S.C. § 1962(c)*

To state a claim under § 1962(c), the Plaintiffs must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Slaney,* 244 F.3d at 597. Even though the elements are straightforward, simply listing them will not suffice to state a § 1962(c) claim; rather, the Plaintiffs "must allege facts to support each element." *Goren v. New Vision Int'l Inc.,* 156 F.3d 721, 727 (7th Cir.1998). In this case, the Defendants presently moving for dismissal argue that Plaintiffs' amended complaint is deficient with respect to each of the § 1962(c) elements. The court both agrees in part and disagrees in part, as will be explained below.

### a. "Conduct"

■ According to the Supreme Court, in order to satisfy the "conduct" element of § 1962(c) a plaintiff must allege that the Defendants "participated in the operation or management of the [RICO] enterprise itself." *Reves v. Ernst & Young,* 507 U.S. 170, 183, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993). Thus, a degree of involvement be-

yond "mere participation in the activities of the enterprise" is required in order to hold a defendant liable under § 1962(c): "the defendant must participate in the operation or management of the enterprise." *Goren,* 156 F.3d at 727.

■ In this case, the Plaintiffs have failed to plead sufficient facts to satisfy the *Reves* operation or management test with respect to any of the individual appraiser Defendants. The amended complaint alleges that the appraiser Defendants performed services for NovaStar—namely, providing appraisals of the subject properties—but does not contain any allegations that the individual appraisers were involved in directing the affairs of SVI, the alleged enterprise. Even if the appraiser Defendants can be tied to SVI through NovaStar's business relationship with that alleged enterprise, "simply performing services for an enterprise, even with knowledge of the enterprise's illicit nature, is not enough to subject an individual to RICO liability under § 1962(c)." *Id.* at 728.

■ Perhaps appreciating the limited roles that the individual appraisers played in the purportedly fraudulent scheme, Plaintiffs allege in the alternative that NovaStar, Stocker, Miller, Stow, Johnson, Phillips, and Daniel constitute an "association-in-fact" enterprise. *See* 18 U.S.C. § 1961(4). When a RICO enterprise is described as an association in fact, "lower-rung" members of the enterprise can be deemed liable if they "knowingly implemented" decisions of upper management, thereby "enabling the enterprise to achieve its goals." *MCM Partners, Inc. v. Andrews–Bartlett & Assocs., Inc.,* 62 F.3d 967, 979 (7th Cir.1995). However, even under this less stringent application of the *Reves* operation or management test, the appraiser Defendants in this case cannot be deemed to have conducted a RICO enterprise. For one thing, the amended complaint never alleges that the individual

appraisers "knowingly" implemented decisions of NovaStar, one of the purported decision-makers within the enterprise. All the amended complaint states is that NovaStar ordered various appraisals from Miller, Stow, Johnson, Phillips, and/or Daniel when Decatur purchased and closed on the subject properties.[4] There are no allegations that NovaStar directed the appraisers to value the subject properties in a certain manner or at a particular amount. In fact, none of the circumstances surrounding the appraisals are discussed in the amended complaint—Plaintiffs just maintain that the appraisals were inflated (and notably, Plaintiffs have not even alleged what the subject properties were truly worth). It appears that the individual appraisers were not employees of NovaStar, but rather worked as independent contractors. Furthermore, the amended complaint does not allege that any of the individual appraiser Defendants committed predicate acts of racketeering, such as mail and/or wire fraud.[5] (Am. Compl.¶¶ 71–72.) *Cf. MCM Partners*, 62 F.3d at 979. Thus, to the extent Count I asserts a claim against the individual appraiser Defendants under § 1962(c), it must be dismissed.[6]

On the other hand, with respect to the alleged "conduct" of NovaStar and Stocker the amended complaint stands on firmer ground. This is because, as noted above, the Plaintiffs allege that SVI, Stapleton, NovaStar, and Stocker constitute an "association in fact" for the purposes of RICO's enterprise requirement. *See* 18 U.S.C. § 1961(4). NovaStar and Stocker have ignored the somewhat different treatment that the law gives to association-in-fact enterprises, as opposed to traditional RICO enterprises, and so their primary arguments for dismissal under the "conduct" prong are off target. These Defendants are most likely correct that under the traditional *Reves* operation or management test, neither NovaStar nor Stocker have been shown to direct the affairs of SVI. In other words, if all the Plaintiffs had alleged was a traditional RICO enterprise, then NovaStar and Stocker would likely be dismissed as mere service providers for the enterprise. *Goren*, 156 F.3d at 728. But because Plaintiffs contend an association-in-fact enterprise, the court must determine whether NovaStar and Stocker were "lower-rung" participants who "knowingly implemented" the decisions of the enterprise's upper management. *MCM Partners*, 62 F.3d at 979.

In this case, the amended complaint never expressly states that NovaStar and/or Stocker knowingly implemented decisions handed down by SVI or Stapleton.[7] However, the Plaintiffs have plead enough facts

---

**4.** Defendants Miller and Stow are alleged to have acted together as the appraisers for only one of the subject properties. (Am. Compl.¶ 31.) "Such sporadic involvement is not sufficient to make them part of [a RICO] enterprise," even without considering the tests in *Reves* and *MCM Partners*, and thus forms yet another reason why Count I must be dismissed as to Miller and Stow. *Guar. Residential Lending, Inc. v. Int'l Mortgage Ctr., Inc.*, 305 F.Supp.2d 846, 858 (N.D.Ill.2004).

**5.** Plaintiffs have tried to show in their *briefs* that the individual appraisers committed predicate acts of racketeering consisting of mail and wire fraud, but that is not where they needed to make that showing: such con-

duct should have been detailed with sufficient particularity in the amended complaint. *See Kennedy v. Venrock Assocs.*, 348 F.3d 584, 593 (7th Cir.2003) ("supplementation cannot save the charge if the charge is one of fraud").

**6.** There are alternative reasons why the individual appraiser Defendants should be dismissed, as the Court will explain *infra*.

**7.** The court does wish to note that the Plaintiffs come close to pleading as such with respect to Stocker in Paragraph 76 of the amended complaint, but fail to use similar language as to NovaStar.

whereby such knowledge can be readily inferred. A closer look at the *MCM Partners* case proves helpful in this regard. *MCM Partners* involved an alleged association-in-fact RICO enterprise consisting of various defendants who had as their purpose to make one of the defendants " 'the exclusive provider of forklift and material handling and personnel moving equipment for all exhibition contractors at McCormick Place [in Chicago, Illinois].' " *Id.* at 977–78. After first noting the key differences between association-in-fact enterprises and traditional RICO enterprises, the court relied on several factors to conclude that certain "lower-rung" defendants knowingly implemented the decisions of the enterprise's upper management. *Id.* at 979. The court stressed that the lower-rung participants were alleged to have committed predicate acts of racketeering " 'at the direction' of the enterprise's managers," and further that they "were vital to the achievement of the enterprise's primary goal." *Id.* (internal citation omitted). That being the case, the court concluded that the plaintiff had sufficiently stated an claim under § 1962(c)'s conduct requirement with respect to certain members of the alleged association-in-fact enterprise.

Similarly, in the instant case the amended complaint paints a picture of NovaStar and Stocker as being integral components in the purported real estate scheme. The purpose of the alleged association-in-fact enterprise is described as one "to coordinate efforts to induce the Plaintiffs to enter into purchase agreements with third-party sellers and related mortgage transactions on properties which had been appraised far in excess of their fair market values...." (Am.Compl.¶ 65.) To that end, NovaStar, working by and through Stocker, is described as acting in the capacity of mortgage broker for Decatur as he purchased and closed on the subject properties. NovaStar also is said to have ordered the appraisals on each of the subject properties. By serving as mortgage broker and ordering the appraisals, NovaStar and Stocker are shown to have been "vital to the achievement of the enterprise's primary goal." *MCM Partners,* 62 F.3d at 979. In other words, as the purportedly fraudulent scheme is described in the complaint, it is doubtful that its goals could have been fulfilled if NovaStar (and/or Stocker) were not involved. Those two Defendants are said to have been the foot-soldier intermediaries between SVI/Stapleton and Decatur's ability to purchase the subject properties that are at the center of this litigation. (Am. Compl.¶¶ 23, 30, 31, 39, 40, 47, 48.)

 Furthermore, the amended complaint sets forth certain predicate acts of racketeering as having been committed by NovaStar, including acts of fraud involving interstate wire transmissions between NovaStar and various lenders and insurers. (Am.Compl.¶ 71.); *see MCM Partners,* 62 F.3d at 979. Though the amended complaint does not state that SVI and/or Stapleton—who can best be described as the alleged upper managers of the enterprise—directly ordered NovaStar and Stocker to commit predicate acts of racketeering, the Plaintiffs do demonstrate that Stapleton informed Plaintiffs at the onset of NovaStar's role in the real estate venture, and it can be inferred that he (and/or SVI) instructed NovaStar (and/or Stocker) to carry out the above-mentioned mortgage brokering services that would necessarily have included the wire transmissions. (Am.Compl.¶¶ 23, 25.) In sum, Plaintiffs have sufficiently shown that NovaStar and Stocker played a part in conducting the alleged association-in-fact enterprise for purposes of § 1962(c), and therefore the amended complaint will not be dismissed as to them on that ground.[8]

---

8. Though the amended complaint could do better in identifying and explaining how De-

#### b. "Pattern of racketeering activity"

■ A "pattern of racketeering activity" consists of at least two predicate acts of racketeering committed within a ten-year time period. 18 U.S.C. § 1961(5). In the present case, Plaintiffs allege predicate acts of mail and wire fraud. *See* 18 U.S.C. §§ 1341, 1343. As the court hinted at in the above discussion of the standard of review in this case, a civil RICO plaintiff must allege predicate acts of fraud with particularity. Fed.R.Civ.P. 9(b). To do so, the plaintiff "must allege 'the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.' " *Goren*, 156 F.3d at 729 (citing *Vicom*, 20 F.3d at 777). "Moreover, because a RICO plaintiff must allege *two* predicate acts of fraud, she must satisfy the requirements of Rule 9(b) twice." *Id.*

■ With respect to the individual appraiser Defendants, the amended complaint fails to allege a pattern of racketeering activity with sufficient particularity. Matters are not helped by the fact that Plaintiffs routinely "lump" the Defendants together in their attempt to plead predi-cate acts of mail and wire fraud. *See id.* at 730. For example, the amended complaint provides that "the racketeering activities have been engaged in by the Defendants for the purpose of carrying out unlawful schemes." But when Plaintiffs then attempt to go into greater detail about the purported wire and mail fraud, it appears that most such acts are alleged to have been committed by SVI and/or Stapleton. (Am.Compl.¶¶ 67, 70.) At another point in the amended complaint the Plaintiffs offer that "*Defendants* repeatedly caused ... transmissions through the use of interstate wire facilities," and yet the only communications detailed in the remainder of that paragraph consist of transmissions between NovaStar and certain third-party entities. (Am. Compl. ¶ 71 (emphasis added).) Similarly, when attempting to detail acts of mail fraud, Plaintiffs make accusations against all Defendants, but then go on in the same paragraph to simply describe a letter received by Stapleton, as well as several letters received by Decatur from non-party, third-party entities. (Am. Compl.¶ 72.) The lumping of Defendants is not saved by the Plaintiffs' invocation of factual paragraphs in the remainder of the amended complaint. Doing so, for instance, would mean lumping the appraisals

---

fendants constitute an association-in-fact enterprise, the court does not feel Count I can be dismissed on this ground. An "association in fact" for RICO purposes consists of a "union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). This type of enterprise "can be formal or informal, [but] some type of organizational structure is required." *Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 675 (7th Cir.2000). Furthermore, a RICO enterprise "must be 'an organization separate from the predicate acts [of racketeering] themselves,' and must be 'organized in a manner amenable to hierarchial or consensual decision making.' " *Id.* (citations omitted). Despite Plaintiffs' frustrating invitation to peruse virtually the entire amended complaint for evidence of an association-in-fact enter-prise, the facts supporting their claim can be found in those paragraphs. The very nature of the alleged scheme is amenable to consensual decision making. The scheme was presented to Plaintiffs in a manner that outlined NovaStar's role and the interrelationship between NovaStar and SVI/Stapleton. Stapleton and SVI emerge as the purported leaders of the enterprise, but it is not unreasonable to find that NovaStar and/or Stocker also played a part in decision making given their roles as intermediaries in the alleged scheme. In sum, the scheme is described as one wherein NovaStar and Stocker were functioning as part of "a continuing unit." *See United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981). Plaintiffs have thus sufficiently alleged an association-in-fact RICO enterprise.

by Miller and Stow together with the other seven appraisals performed by different appraisers on different properties and at different times. Such jumbled pleading is enough to find that Count I should be dismissed as to all Defendants, but the court will go on to describe in even greater detail why the amended complaint lacks sufficient particularity as to the appraiser Defendants. *See Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1326 (7th Cir.1994).

Most problematic from a Rule 9(b) point-of-view is that the amended complaint never alleges, in so many words, any predicate acts of wire or mail fraud committed by the appraiser Defendants. In fact, none of the names of the appraiser Defendants even appear in Count I. Plaintiffs argue in their briefs that they do not need to show that the individual appraiser Defendants used mail or wire transmissions, but only that they caused mail or wire services to be used by "acting with knowledge that their use would follow in the ordinary course of business, or where such use [could] reasonably be foreseen." *Am. Auto. Accessories, Inc. v. Fishman*, 175 F.3d 534, 542 (7th Cir.1999) (citation omitted). This true statement of the law, however, does not help Plaintiffs' cause under Rule 9(b) because they fail to even satisfy the test noted in *Fishman*. Plaintiffs must, at a minimum, specify the time, place, and content of any misrepresentation alleged to have been made by the Defendants. *Goren*, 156 F.3d at 730. This Plaintiffs fail to do with respect to the appraiser Defendants. As one Court notes, "particularity" in the context of Rule 9(b) "means the who, what, when, where, and how: the first paragraph of any newspaper story." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir.1990). Far from providing such information, a fair reading of the amended complaint does not indicate which (if any) of the appraisals prepared by the appraiser Defendants even found their way into a mail

or interstate wire service. When examining the only place where Plaintiffs attempt to point to specific acts of mail or wire communication (paragraphs 71 and 72 of the amended complaint), noticeably absent are any references to communications by the appraiser Defendants. A conclusory allegation as to interstate wire transmissions by and between *NovaStar* and various lenders does not cut it with respect to pleading predicate acts of the appraiser Defendants with sufficient particularity. *See Robin v. Arthur Young & Co.*, 915 F.2d 1120, 1127 (7th Cir.1990) (holding that plaintiffs must provide more than conclusory allegations to satisfy Rule 9(b)). This would be true even if NovaStar contracted with those Defendants for appraisals that eventually found their way into the mail. The Plaintiffs get nearer to pleading fraud with sufficient particularity as to the appraiser Defendants in their briefs, but that is not where such pleading needs to be. *See Kennedy*, 348 F.3d at 593. One simply cannot comprehend from the amended complaint the nature of the predicate acts that the appraiser Defendants are thought to have committed. This provides yet another reason why Count I must be dismissed as to them.

■ Whether Plaintiffs have plead predicates of racketeering as to NovaStar and Stocker with sufficient particularity is, at first blush, a much closer call. The court has already stated that Plaintiffs must allege more than conclusory allegations to satisfy Rule 9(b), and thus most of the amended complaint's references to mail and wire fraud as to all Defendants are simply insufficient to state a claim. The court's critique of Plaintiffs' tendency to "lump" all Defendants together when attempting to sketch out alleged predicate acts applies in equal force to a discussion of NovaStar and Stocker, just as it applied to the discussion of the appraiser Defen-

dants. Placing such pleading deficiencies aside for a moment, the only instance where Plaintiffs even approach pleading predicate acts of fraud with particularity as to NovaStar and Stocker is in Paragraph 71 of the amended complaint. In that paragraph, Plaintiffs cite the following as interstate wire transmissions related to NovaStar and/or Stocker: (a) mortgage-related transmissions between NovaStar and Aegis Funding Corp. ("Aegis"); (b) a fax from Argent Mortgage Company ("Argent") to NovaStar and Stocker received on May 23, 2003; (c) mortgage-related transmissions between NovaStar and SIB Mortgage Corp. ("SIB"); and (d) an e-mail from an employee at Dansig Insurance Services ("Dansig") to Stocker on September 23, 2003. (Am.Compl.¶ 71.) Plaintiffs utterly fail to describe the time, place, and content of the transmissions between NovaStar, Aegis, and SIB. *Goren,* 156 F.3d at 730. Even if NovaStar sent wire transmissions to Aegis and SIB, the amended complaint does not provide any notice to NovaStar as to how such transmissions relate to a scheme to defraud Decatur and DV. To the extent those transmissions are alleged to constitute predicate acts of wire fraud they are wholly insufficient.

As to transmissions between NovaStar and Argent, the Plaintiffs did attach a fax dated May 23, 2003, to their original complaint. (Compl.Ex. P.) Similarly, Plaintiffs attached to their original complaint an e-mail between Dansig and Stocker that is dated September 23, 2003. (Compl.Ex. Q.) These two transmissions provide the time, place, and content of alleged predicate acts of wire fraud. The fax from Argent appears to be a loan approval summary with NovaStar listed as broker and Decatur listed as borrower. Oddly enough, though, the property described in the summary is not one of the subject properties alleged to be involved in this litigation. Furthermore, the date of the fax is almost a month before Decatur alleges he entered into the first Mortgage Loan Origination Agreement with NovaStar (June 6, 2003). How this fax can then be considered a predicate act of wire fraud escapes the court. The act occurred before NovaStar is alleged to have even entered the fraudulent scheme, and the document describes a property that Decatur has never alleged he was defrauded into purchasing.[9]

That leaves only one predicate act that is stated with particularity: the e-mail between Stocker and Dansig. This e-mail reveals that NovaStar, by and through Stocker, did send and receive at least one e-mail that had Decatur and one of the subject properties as its focus. But even if the Stocker e-mail constitutes a predicate act, it is just that, one act. A civil RICO plaintiff must allege at least *two* predicate acts. 18 U.S.C. § 1961(5); *Slaney,* 244 F.3d at 599. Accordingly, Plaintiffs § 1962(c) claim against NovaStar and Stocker must be dismissed.

▪ The court wishes to stress that it is not attempting to be overly strict when addressing Plaintiffs' attempt to plead predicate acts of racketeering. Plaintiffs are correct that the mail and wire fraud statutes proscribe the use of the mails and interstate wires in furtherance of a scheme to defraud. As such, the mail and wire communications do not need to be fraudulent in and of themselves. *See United States v. Ashman,* 979 F.2d 469, 482 (7th Cir.1992) (citing *Schmuck v. United States,* 489 U.S. 705, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989)). But the court is not holding that the Plaintiffs' wire fraud claims must be dismissed because they do not contain misrepresentations; rather, the claims are

---

9. The irrelevancy of the Argent fax provides one example of why the court cannot simply accept conclusory, loose references to mailings and wire transmissions as well-plead predicate acts of fraud.

being dismissed because they have not been plead with sufficient particularity under Rule 9(b). The purpose of Rule 9(b) is threefold: "(1) protecting a defendant's reputation from harm; (2) minimizing 'strike suits' and 'fishing expeditions'; and (3) providing notice of the claim to the adverse party." *Vicom,* 20 F.3d at 777 (citations omitted). Because of those goals, "'loose references to mailings and telephone calls' in furtherance of a purported scheme to defraud will not do." *Jepson, Inc.,* 34 F.3d at 1328 (citation omitted). "[T]he plaintiff must, within reason, describe the time, place, and content of the mail and wire communications, and it must identify the parties to these communications." *Id.* Such requirements are especially necessary when, as in the instant case, "the complaint accuses multiple defendants of participating in the scheme to defraud." *Id.* The court is mindful of the proposition that specificity requirements may be relaxed when the details are within the defendants' exclusive control. *Id.* However, it is unclear from Plaintiffs' amended complaint and briefs how additional discovery would be of assistance on this point. From the exhibits attached to the original complaint it appears Plaintiffs had or could have had access to some forms of communications between NovaStar and certain third-party lenders and insurers whose information would not be in the exclusive possession of the Defendants. Moreover, the fact that one of the purported examples of wire fraud consisted of a fax bearing no relevance to the present litigation does not help Plaintiffs' cause. The court also notes that counsel is the same for Deca-

tur/DV and all Intervenor Plaintiffs. To the extent the Intervenor Plaintiffs might have access to evidence going to the time, place, and content of alleged predicate acts of wire fraud, such information could be referenced in Decatur/DV's second amended complaint (if they choose to file one). Finally, the court notes that the purpose of discovery is to distill the issues in a case for trial, not to gather information to support a complaint. *See Fred A. Smith Lumber Co. v. Edidin,* 845 F.2d 750, 754 (7th Cir.1988) (holding that plaintiff acted in bad faith by filing a complaint alleging RICO violations "in the hope that future discovery might uncover the allegations of wrongdoing") (citation omitted). The Plaintiffs will have an opportunity to file an additional amended complaint to cure the technical pleading deficiencies described above. That being the case, the court will continue to address the remaining issues raised by the RICO claims.

 If and when Plaintiffs sufficiently allege at least two predicate acts of racketeering as to the appraiser Defendants and/or NovaStar and Stocker, the next step in the "pattern of racketeering activity" calculus involves the "continuity plus relationship" test.[10] *Vicom,* 20 F.3d at 779. The relationship prong of this test "requires that the predicate acts be 'committed somewhat closely in time to one another, involve the same victim, or involve the same type of misconduct.'" *Id.* (citation omitted). For the sake of discussion the court will accept the Plaintiffs' general allegations that interstate wire transmissions were used in the execution of the purported scheme to defraud Plaintiffs, and that such communications are

---

10. The "pattern" requirement seeks to prevent RICO from becoming a surrogate for actions regarding "garden-variety" fraud, routine commercial business disputes, or sporadic criminal activity that belong in state court. *See Midwest Grinding Co., Inc. v. Spitz,* 976 F.2d 1016, 1022 (7th Cir.1992).

"While it is clear that the scope of civil RICO extends beyond the prototypical mobster or organized crime syndicate, it is equally evident that RICO has not federalized every state common-law cause of action available to remedy business deals gone sour." *Id.* at 1025 (citation omitted).

sufficient to establish the relationship aspect of the pattern test. As for the continuity prong, the continuity of predicate acts necessary to establish a pattern of racketeering activity can be either open- or close-ended in nature. *See id.* at 779 (citing *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 241, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989)). Both standards of continuity will be addressed.[11]

Closed-ended continuity refers to a "series of related predicates· extending over a substantial period of time." *H.J., Inc.*, 492 U.S. at 242, 109 S.Ct. 2893. According to the Supreme Court, "[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy [the closed-ended continuity] requirement: Congress was concerned in RICO with long-term criminal conduct." *Id.* Whether Plaintiffs have sufficiently pleaded closed-ended continuity requires the court to examine several factors: " 'the number and variety of predicate acts and the length of time over which they were committed, the number of victims, the presence of separate schemes and the occurrence of distinct injuries.' " *Vicom, Inc.*, 20 F.3d at 780 (quoting *Morgan v. Bank of Waukegan*, 804 F.2d 970, 975 (7th Cir.1986)). Though no single factor is dispositive, courts are to seek a "natural and commonsense result, recognizing that Congress was concerned with long-term criminal conduct [when enacting RICO]." *Id.* (citations omitted).

Although closed-ended continuity is to be analyzed on a case-by-case basis, Seventh Circuit case law makes clear that such continuity will rarely be found when the period of time in which the predicate acts were committed was less than one year in duration. *Id.; Midwest Grinding Co., Inc.*, 976 F.2d at 1024. In fact, "[d]uration 'is perhaps the closest thing we have to a brightline continuity test.' " *Vicom, Inc.*, 20 F.3d at 780 (citing *Midwest Grinding Co., Inc.*). Plaintiffs in this case allege a scheme to defraud involving acts of mail and wire fraud that lasted at the most eight months (May 2003 to December 2003). If only NovaStar and Stocker's involvement in the scheme is considered, the relevant period of time shrinks to four months (June 2003 to September 2003).[12] Both of those time periods represent significant obstacles to Plaintiffs' ability to demonstrate closed-ended continuity. *See id.*

Also troubling from a closed-ended continuity standpoint is the fact that the only predicate acts alleged by Plaintiffs involve mail and wire fraud. Acts of mail and wire fraud do not amount to "a 'variety of predicate acts' as that phrase is understood in the caselaw." *Id.* at 781. As such, the Seventh Circuit disfavors finding closed-ended continuity where a single scheme, regardless of duration, has relied solely on multiple acts of mail and wire fraud. *Id.* In this case, Plaintiffs have alleged one basic scheme to defraud.[13] Al-

11. At the outset, the court notes that the Plaintiffs' attempt to address the continuity issue in their amended complaint is remarkably slight. According to the amended complaint, the alleged predicate acts have continuity because "they have occurred at different points in time and involve more than one victim." (Am.Compl.¶ 68.) Once again, such conclusory statements cry out for dismissal. *See Goren*, 156 F.3d at 727 (noting that pleading § 1962(c) elements in boilerplate fashion is not sufficient to state a claim).

12. The only person who potentially may be able to allege that the predicate acts occurred over a greater period of time is Intervenor Plaintiff Orkoulas. But even her complaint is vague as to the alleged time frame, and appears to describe the scheme as lasting only three months (January 2004 to March 2004).

13. Although a pattern of racketeering activity can be found when only one scheme is alleged, "the number of schemes is still relevant as to whether continuity exists." *Vicom, Inc.*,

though their tendency to lump Defendants together may cloud the issue, the Plaintiffs still only allege predicate acts of mail and wire fraud. Even if those claims are stated with particularity, they still do not justify a finding of closed-ended continuity.

As for the number of victims affected by the purported scheme, Plaintiffs look to the four Intervenor Plaintiffs for support. The fact that at least six victims of the scheme have been identified does support Plaintiffs' case. However, as already noted, no one factor in the closed-ended continuity analysis is dispositive. That six victims are alleged does not outweigh or even counterbalance the gross deficiencies Plaintiffs are faced with respect to the duration and variety-of predicate-act factors already discussed. Moreover, the amended complaint under scrutiny at this stage of the litigation does not provide any details about the Intervenor Plaintiffs' involvement in the scheme.

The final factor, "the occurrence of distinct injuries," is more difficult to analyze. Surely from Plaintiffs' perspective they would like the court to look at each subject property as the cause of a distinct economic injury. On the other hand, the moving Defendants point to the single RICO scheme under which all the properties were purchased and argue that it produced identical economic injuries. Plaintiffs' position appears to be more in line with the Seventh Circuit's take on the issue. For example, in *Morgan v. Bank of Waukegan*, 804 F.2d 970, 976 (7th Cir.1986), the very case that gave courts the list of factors presently being discussed, the Court noted that separate acts of mail fraud related to individual real estate transactions were distinct injuries. In this respect, the instant case differs from *U.S. Textiles, Inc., v. Anheuser–Busch, Co., Inc.*, 911 F.2d 1261 (7th Cir.1990), where injuries stemming from a single contract were deemed

non-distinct. Though Plaintiffs allege one overall scheme, the economic injuries differ from property to property.

■■■ However, even with two of the *Morgan* factors on their side, Plaintiffs still do not sufficiently allege closed-ended continuity in their amended complaint. The court feels compelled to so conclude based on the short duration of the alleged scheme and the fact that the only predicate acts alleged relate to wire and mail fraud. Because they have failed to allege closed-ended continuity, the court must now determine whether Plaintiffs can establish open-ended continuity.

■■■ Open-ended continuity involves "predicate acts occurring over a short period of time so long as there is a threat that the conduct will recur in the future." *Corley v. Rosewood Care Ctr., Inc.*, 142 F.3d 1041, 1049 (7th Cir.1998). To demonstrate that such a threat exists, Plaintiffs must show that: "(1) 'a specific threat of repetition exists', (2) 'the predicates are a regular way of conducting [an] ongoing legitimate business,' or (3) 'the predicates can be attributed to a defendant operating as part of a long-term association that exists for criminal purposes.'" *Vicom, Inc.*, 20 F.3d at 782 (citations omitted). Plaintiffs have not even attempted to allege that the predicate acts of mail and wire fraud were part of NovaStar, Stocker, or any of appraiser Defendants' ordinary course of business, nor have they alleged that these Defendants were operating as part of a long-term association existing for criminal purposes. Thus, the last two factors of the open-ended test are presently of no import. Plaintiffs have also failed to allege that the scheme involves a threat of repetition. Though it is unclear whether the scheme had "a clear and terminable goal" with "a natural ending point," see *Vicom,*

20 F.3d at 782; *see United States Textiles,* *Inc.*, 911 F.2d at 1269.

*Inc.*, 20 F.3d at 782, the scheme as to Plaintiffs appears to have come to an end. For instance, they do not allege that they are required to make any future payments to Defendants. Plaintiffs note that the scheme involved multiple purchasers of other properties, namely, the Intervenor Plaintiffs. However, the facts related to the Intervenor Plaintiffs were not described in Plaintiffs' amended complaint, which is the complaint presently being analyzed. If in a future amended complaint the Plaintiffs go into detail about the facts surrounding the Intervenor Plaintiffs' involvement in the scheme that are beyond mere conclusory allegations, then a different view of this issue may be required. Such facts could be indicative of a scheme that threatened to be more widespread than just the subject properties sold to Decatur. *See Guar. Residential Lending, Inc. v. Int'l Mortgage Ctr., Inc.*, 305 F.Supp.2d 846, 860 (N.D.Ill.2004). This notion is borne out by the fact that Intervenor Plaintiff Orkoulas alleges that the scheme lasted at least until March of 2004—several months after Stapleton represented to Decatur that he was out of the real estate prospecting business. But as the amended complaint stands in its present form, Plaintiffs have not sufficiently alleged open-ended continuity.

Based on the foregoing reasons, Plaintiffs have failed to state a claim for relief under 18 U.S.C. § 1962(c).[14] Therefore, Count I of the amended complaint must be DISMISSED as to NovaStar, Stocker, and the individual appraiser Defendants. The dismissal is without prejudice, however, because it is based purely on technical pleading deficiencies. Much time has passed since the amended complaint was filed. It is thus conceivable that the pleading deficiencies outlined above can be cured through the filing of a second amended complaint. For this reason, the court will go on to address Plaintiffs' state law claims.

### C. Indiana Racketeering Claims ("Baby" RICO)

 Plaintiffs next undertake to assert a claim pursuant to Indiana's RICO statute in Count II of their amended complaint. Indiana Code § 35–45–6–1 *et seq.* This claim must fail, however, for the same reasons Plaintiffs fail to state a claim under the federal RICO statute. Indiana's "baby RICO" statute is modeled after the federal RICO statute, and federal law is relied upon when interpreting and applying the Indiana act. *Yoder Grain, Inc. v. Antalis*, 722 N.E.2d 840, 845 (Ind.Ct.App. 2000); *see Directv v. Edwards*, 293 F.Supp.2d 873, 879 (N.D.Ind.2003). Therefore, because they have failed to plead predicate acts of racketeering with the required particularity, and have also failed to demonstrate the necessary continuity for a pattern of racketeering activity, Plaintiffs have failed to state a claim under

---

**14.** Plaintiffs also allege conspiratorial violations of RICO under 18 U.S.C. § 1962(d). However, Plaintiffs lump all Defendants together through this accusation, and then indicate that only Stocker and Stapleton agreed to commit at least two predicate acts to accomplish the RICO enterprise's goals. Such an agreement is one of the two things a Plaintiff must allege to state a claim under § 1962(d). *See Slaney*, 244 F.3d at 600. Yet, Plaintiffs have not made similar claims against any of the appraiser Defendants, and even the claim against Stocker is conclusory.

*See Goren*, 156 F.3d at 733 ("It is well established that a complaint may be dismissed if it contains only conclusory, vague, and general allegations of a conspiracy."). Moreover, given the court's conclusion that Plaintiffs have not alleged the requisite continuity for a pattern of racketeering, it is not clear from the facts set forth in the amended complaint that Stocker and Stapleton agreed "to participate in an endeavor which, if completed, would constitute a violation of the substantive [RICO] statute." *Id.* at 732. Plaintiffs have failed to state a claim under § 1962(d).

Indiana's RICO statute. Count II must be **DISMISSED** as to NovaStar, Stocker, and the individual appraiser Defendants.

### D. Breach of Contract (as to NovaStar), Negligence (as to NovaStar), Promissory Estoppel and Unjust Enrichment Claims [15]

Count IV of Plaintiffs' amended complaint is a claim for breach of contract against NovaStar. Rule (9)(b)'s particularity requirement does not apply to a breach of contract claim, and thus the court returns to the realm of notice pleading. Plaintiffs simply need to allege enough information so that NovaStar has at least minimal notice of the claim or claims being asserted. *See* Fed.R.Civ.P. 8. As a corollary, this claim should only be dismissed if there is no set of facts under which NovaStar could be found to have breached its contract with Decatur. The court, however, is not prevented from examining facts that show no claim exists-in other words, Plaintiffs may plead themselves out of court on this count.

 The elements of breach of contract claim under Indiana law are: (1) the existence of a contract; (2) defendant's breach thereof; and (3) damages.[16] *Wilson v. Lincoln Fed. Sav. Bank*, 790 N.E.2d 1042, 1048 (Ind.Ct.App.2003). According to the amended complaint, Plaintiffs allege that NovaStar breached the relevant contract by engaging in a scheme to defraud that involved the providing of fraudulent appraisers and appraisals. NovaStar argues that Plaintiffs' breach of contract claim fails because it does not allege the existence of a contractual duty that NovaStar has breached. NovaStar supports its position by pointing to the contracts between the parties. (Compl.Exs.D, H–J.) A cursory review of those documents does not reveal that NovaStar agreed to guarantee the *bona fides* of the appraisals that it was to order. The contract documents do provide that NovaStar was to *analyze* the documentation related to the processing of loans, a process that included ordering or obtaining appraisals. (Compl. Ex. I (emphasis added).) NovaStar also agreed to prepare and submit the necessary loan application materials to various lenders. (*Id.*) The problem with Plaintiffs' breach of contract claim, however, is that it does indicate which of the specific terms of the contract NovaStar is accused of breaching. By simply referencing the alleged scheme to defraud as being the breach, it appears that what Plaintiffs are trying to allege is something akin to breach of the duty to act in good faith and in accordance with reasonable standards of fair dealing, a claim typically resting in tort, or something in the realm of traditional fraud.[17] *See Weidman v. Erie Ins.*

---

**15.** At this juncture, the court wishes to express some concern as to whether DV is a proper Plaintiff in this action. The majority of contact between Decatur and the Defendants appears to have involved the former in his individual capacity. Indeed, many of the facts giving rise to this action occurred before DV was even formed. (Am.Compl.¶ 37.) If DV was used in an attempt to show a greater number of victims for the purposes of pleading RICO violations, that goal can be served in any future complaint filed by Decatur by expanding on the circumstances surrounding the Intervenor Plaintiffs. At most, it appears DV was used as Decatur's "alter ego" to facilitate the transfer of documents and checks related to the subject property purchases. A second amended complaint should therefore clarify what role, if any, DV has in this litigation. Otherwise, the court may be forced to consider dismissing DV.

**16.** The court will apply Indiana substantive to Plaintiffs' state law claims. *Timmerman v. Modern Indus., Inc.*, 960 F.2d 692, 696 (7th Cir.1992) ("[F]ederal courts exercising pendent or diversity jurisdiction must apply state law to matters of substantive law.").

**17.** This interpretation of Plaintiffs' breach of contract claim is reinforced by the arguments in their briefs.

*Group,* 745 N.E.2d 292, 299 (Ind.Ct.App. 2001). Plaintiffs might very well have a contract claim against NovaStar, but as the amended complaint stands now, it does not appear that traditional breach of contract would be a proper claim in this case. In any event, this count should be clarified through a more definite statement before it is allowed to proceed. Count IV must be **DISMISSED**.

■ Count VII of Plaintiffs' amended complaint is a claim for negligence against NovaStar.[18] Negligence claims under Indiana law require proof of three elements: (1) a duty owed by the defendant to the plaintiff; (2) breach of that duty by the defendant; and (3) an injury resulted that was proximately caused by the defendant's breach. *Wilson,* 790 N.E.2d at 1046. Plaintiffs allege that NovaStar contracted to perform services that included ordering and obtaining appraisals on the subject properties, that NovaStar had a duty to perform those services in a professional and workmanlike manner, and that NovaStar breached that duty by failing to conform its conduct to the requisite standard of care. NovaStar contends that Count VII should be dismissed because it did not breach the aforementioned duty, and that even if it did, such breach was not the proximate cause of Plaintiffs' injuries.

■ The court finds that Plaintiffs adequately state a claim for negligence against NovaStar. It appears from the pleadings that there may exist a set of facts under which NovaStar could be liable. The arguments advanced by NovaStar go to the merits of the claim, and are best left for a summary judgment motion or the like. Plaintiffs have stated a claim for negligence against NovaStar.[19] Thus,

NovaStar's motion to dismiss Count VII is **DENIED**.

■ Count XIV of Plaintiffs' amended complaint is one asserting promissory estoppel against NovaStar and Stocker. In their briefs, Plaintiffs present this claim as being asserted in the alternative to their breach of contract claim. Under Indiana law, "[a] claim for promissory estoppel consists of the following elements: (1) a promise by the promisee; (2) made with the expectation that the promisee will rely thereon; (3) which induces reasonable reliance by the promisee; (4) of a definite and substantial nature and (5) injustice can be avoided only be enforcement of the promise." *Truck City of Gary, Inc. v. Schneider Nat'l Leasing,* 814 N.E.2d 273, 279 (Ind. Ct.App.2004). Here, Plaintiffs allege that NovaStar and Stocker made promises concerning the legitimacy of the appraisers and appraisals related to the subject properties, that Plaintiffs then relied on those promises, and that NovaStar and Stocker should have known Plaintiffs would so rely.

■ Unfortunately for Plaintiffs, however, NovaStar is correct that if the promises cited by Plaintiffs are founded on a valid written contract between the parties, then the promissory estoppel claim becomes unwarranted surplusage. *See Meisenhelder v. Zipp Exp., Inc.,* 788 N.E.2d 924, 932 (Ind.Ct.App.2003); *see also All–Tech Telecom, Inc. v. Amway Corp.,* 174 F.3d 862, 868–69 (7th Cir.1999). Plaintiffs attached copies of the express contracts between Decatur and NovaStar to their complaint, and NovaStar does not dispute the validity of those contracts. Under such circumstances, and even if plead in the alternative, the doctrine of

---

18. Just as with their breach of contract claim, Rule 9(b)'s particularity requirement does not apply to Plaintiffs' negligence claim.

19. Furthermore, Count VII appears to encompass the allegations that Plaintiffs seem to have tried to make in Count IV (breach of contract by NovaStar).

promissory estoppel would not be appropriate in this case. Count XIV must be DISMISSED.

Count XII of Plaintiffs' amended complaint alleges that all of the Defendants were unjustly enriched. Resolution of this issue is clouded by Plaintiffs' continued pattern of lumping all Defendants together for the purpose of leveling their accusations. For example, it is unclear from the amended complaint whether the individual appraiser Defendants are alleged to have been unjustly enriched. There is no indication that Plaintiffs paid money to those Defendants, and it appears that the appraisers were compensated directly by NovaStar. Moreover, Plaintiffs describe the unjust enrichment claim as being alleged in the alternative to their breach of contract claims. The fact that Plaintiffs' breach of contract claims are asserted solely against NovaStar and SVI tends to indicate that the unjust enrichment claim is not being alleged with respect to the appraiser Defendants.

As to NovaStar, the same problem posed by Plaintiffs' promissory estoppel claim also emerges with respect to their unjust enrichment claim: the existence of a contract. Plaintiffs' unjust enrichment claim becomes superfluous when neither side disputes the existence of a valid contract, even if it is being alleged in the alternative. *See Key Hotel Corp., Club Olympia, Inc. v. Crowe, Chizek & Co.*, 172 Ind.App. 15, 359 N.E.2d 262, 265 (1977). Plaintiffs went so far as to attach copies of the express contracts between Decatur and NovaStar to their complaint, and NovaStar does not dispute the existence or validity of the contracts. Accordingly, Plaintiffs' unjust enrichment claim is inappropriate. Count XII must be **DISMISSED** as to NovaStar, Stocker, and the individual appraiser Defendants.

### E. Civil Conversion Claim

Count X of Plaintiffs' amended complaint alleges that the Defendants committed the offense of conversion. Although not cited in their amended complaint, it appears that Plaintiffs are bringing this claim pursuant to Indiana Code § 35–43–4–3. Under that statutory provision, "[a] person who knowingly or intentionally exerts unauthorized control over property of another person commits criminal conversion." Indiana Code § 35–43–4–3. Though the offense of conversion is penal in nature, a plaintiff can bring a civil action premised on that offense if he or she suffered a pecuniary harm as a result. Indiana Code § 34–24–3–1. A criminal conviction is not a prerequisite to a civil action for conversion, however, and a plaintiff simply needs to prove the offense by a preponderance of the evidence (as opposed to beyond a reasonable doubt). *N. Elec. Co., Inc. v. Torma*, 819 N.E.2d 417, 429 (Ind.App.2004).

Once again, the Plaintiffs' practice of lumping all Defendants together presents an initial hurdle to the court's analysis of Count X. Based on the facts alleged and the parties' briefs, it does not appear that Plaintiffs are claiming that the individual appraiser Defendants committed conversion. For one thing, Plaintiffs fail to allege that they entrusted any property (including money) to the individual appraisers. The appraisers seem to have received all monetary remuneration directly from NovaStar. Therefore, to the extent Count X asserts a claim of conversion against the individual appraiser Defendants, it is insufficient.

With respect to NovaStar, Plaintiffs claim that the "property" unlawfully converted by that Defendant was the money paid for the performance of various professional services. While the Indiana Code does include money within the defini-

tion of "property," Plaintiffs nevertheless have failed to state a claim for conversion in their amended complaint. Under Indiana law, "money may be the subject of a conversion action only if it is 'a determinate sum with which the defendant was entrusted to apply to a certain purpose.'" *Tobin v. Ruman*, 819 N.E.2d 78, 89 (Ind. Ct.App.2004). The instant Plaintiffs have neither alleged a determinate sum nor have they alleged that the money they paid to NovaStar was entrusted for application in a particular manner. Plaintiffs simply allege that the relevant contracts "outlined the terms of NovaStar's compensation." (Am.Compl.¶¶ 28, 44.) Such language gives no indication that any money was being entrusted to or held by NovaStar for a specific purpose. Though the court acknowledges the operation of notice pleading, Plaintiffs' vague and conclusory manner in alleging conversion against NovaStar will not suffice to state a claim. Count X must be **DISMISSED** as to NovaStar, Stocker, and the individual appraiser Defendants.

### F. Fraud and Civil Deception Claims

Count VIII of the amended complaint accuses NovaStar of committing actual and constructive fraud, stemming primarily from alleged oral and written misrepresentations made to Decatur in the context of the two Mortgage Loan Origination Agreements signed by the parties.[20] Specifically, Plaintiffs claim that NovaStar and Stocker misrepresented that they would use legitimate appraisers to conducted legitimate appraisals throughout the real estate transactions involving the subject properties. Being a fraud claim, Rule 9(b)'s particularity requirement applies to Count VIII. This means Plaintiffs "must allege 'the identity of the person who made

the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.'" *Goren*, 156 F.3d at 729 (citing *Vicom*, 20 F.3d at 777).

The elements of actual fraud under Indiana law are: "(1) a material misrepresentation of past or existing facts; (2) made with knowledge or reckless ignorance of falsity; (3) causing the claimant to rely upon the misrepresentation to the claimant's detriment." *Tobin v. Ruman*, 819 N.E.2d 78, 86 (Ind.Ct.App.2004) (citation omitted). Constructive fraud, on the other hand, requires the following elements: "(1) a duty owing by the party to be charged to the complaining party due to their relationship; (2) violation of that duty by the making of deceptive material misrepresentations of past or existing facts or remaining silent when a duty to speak exists; (3) reliance thereon by the complaining party; (4) injury to the complaining party as a proximate result thereof; and (5) the gaining of an advantage by the party to be charged at the expense of the complaining party." *Siegel v. Williams*, 818 N.E.2d 510, 515–16 (Ind.Ct.App.2004) (citation omitted). Under either fraud theory, Plaintiffs have failed to state a claim. First of all, it is difficult to comprehend what the "fraud" is that Plaintiffs are alleging. In their briefs, Plaintiffs seem to argue that the fraud committed by NovaStar relates to the purportedly inflated appraisals performed by the individual appraiser Defendants. If so, Plaintiffs have failed to state a claim for fraud because under either an actual or constructive fraud theory, the key element is a misrepresentation involving a material fact. Yet it is well settled under Indiana law that

20. The individual appraisers are not named as Defendants in Count VIII (fraud), but are so named Count IX (deception).

appraisals are expressions of opinion, not statements of fact, and are thus not actionable under a fraud theory. *See Kreighbaum v. First Nat'l Bank & Trust*, 776 N.E.2d 413, 421 (Ind.Ct.App.2002); *Block v. Lake Mortgage Co., Inc.*, 601 N.E.2d 449, 451 (Ind.App.1992).

 If the amended complaint is carefully scrutinized, it appears Plaintiffs are also alleging that the fraud committed by NovaStar relates to statements made about how appraisers would be selected and how they would then conduct their appraisals. But if that is the case, Plaintiffs have not plead the alleged fraud with sufficient particularity. Plaintiffs do not state what NovaStar actually said regarding the appraisers and appraisals, nor when and how NovaStar made the relevant statements. For example, were the misrepresentations made only when the contracts between the parties were signed? If NovaStar actually guaranteed the legitimacy of the appraisals, did the company do so in writing or orally? Was Stocker the only agent from NovaStar to make the alleged misrepresentations? Answers to these questions would seemingly be within the ambit of Plaintiffs' knowledge, yet they are conspicuously absent from their amended complaint. Plaintiffs are correct that they have provided a brief sketch of the purported scheme to defraud. But

where they have gone awry is in the who, what, when, where, and how details necessary to adequately state claims for fraud. *See DiLeo*, 901 F.2d at 627. Plaintiffs have failed to state a claim for fraud as to NovaStar and Stocker, and Count VIII must be **DISMISSED** as to them.[21]

 Count IX of Plaintiffs' amended complaint asserts that the Defendants committed "civil deception," in violation of Indiana Code § 35–43–5–3(a)(2)–(3) and § 34–24–3–1. The offense of "deception" under Indiana law is penal in nature, but just as the court noted in the context of conversion, a criminal conviction is not a prerequisite to maintaining a civil action based on the commission of that offense.[22] *See Harco, Inc. of Indianapolis v. Plainfield Interstate Family Dining Assocs.*, 758 N.E.2d 931, 945 (Ind.Ct.App.2001). The Plaintiffs must simply show by a preponderance of the evidence that the Defendants committed the crime of deception, and that as a result Plaintiffs suffered a pecuniary loss.[23] *Id.* (citation omitted). Nonetheless, Plaintiffs fare no better with their deception claim than they do with their fraud claims. Plaintiffs once again lump all Defendants together under Count IX, despite the fact that they have not alleged that any of the individual appraiser Defendants made any false or misleading statements to them. Those Defendants

21. If and when Plaintiffs return to the drawing board in preparation for their second amended complaint, the court urges them to carefully scrutinize the manner in which they plead claims for breach of contract, negligence, and fraud. Specifically, the court wishes to note that these types of claims should not simply be "repackaged" versions of each other. *See, e.g., Tobin*, 819 N.E.2d at 86.

22. A person commits the crime of deception if he or she "knowingly or intentionally [makes] a false or misleading written statement with the intent to obtain property..." Indiana Code § 35–43–5–3(a)(3).

23. Count IX also asserts that Defendants committed the crime of deception through the misapplication of property entrusted to them by Plaintiffs. However, as NovaStar points out, the only Defendants alleged to have been entrusted Plaintiffs' property are SVI and/or Stapleton. Plaintiffs never attempt to rebut this argument in their response brief. The court finds that to the extent Count IX asserts a claim of civil deception against NovaStar, Stocker, and the individual appraiser Defendants on the grounds of misapplication of entrusted property, it is insufficient.

simply do not appear to be proper parties with respect to Count IX.

As for NovaStar and Stocker, Plaintiffs have failed to state what statements were made with the intent to obtain Plaintiffs' property, when those statements were made, and how the statements were made. This leaves the court to speculate. If Plaintiffs are referring to the appraisals, then they have not stated a claim for deception since appraisals are deemed opinions under Indiana law, and not statements of fact. *See Kreighbaum*, 776 N.E.2d at 421; *Block*, 601 N.E.2d at 451. Therefore, Count IX must be **DISMISSED** as to NovaStar, Stocker, and the individual appraiser Defendants.

### G. Negligence Claim Against the Individual Appraiser Defendants

█ Count XVI, the last claim included in Plaintiffs' amended complaint, is one for negligence directed at the individual appraiser Defendants. Plaintiffs claim that these Defendants breached their duty to perform valid appraisals on the subject properties. In order to recover for negligent appraisal under Indiana law, the plaintiff-buyer must show either that she was in privity with the appraiser, or that the appraiser had actual knowledge that the buyer would rely on the appraisal. *Block*, 601 N.E.2d at 452; *Emmons v. Brown*, 600 N.E.2d 133, 135–36 (Ind.Ct. App.1992). While the pleadings reveal that Plaintiffs were not in privity with any of the individual appraiser Defendants, there is no indication as to whether these Defendants had actual knowledge that Plaintiffs would rely on their appraisals. This issue must be resolved on the merits,

and not at the Rule 12(b)(6) stage. Plaintiffs have sufficiently stated a claim for negligence against Miller and Stow. Miller and Stow's motion to dismiss Count XVI is **DENIED**.

## III. CONCLUSION

As the foregoing discussion makes clear, this case involves a host of complex legal claims. To summarize the court's primary ruling, the motions to dismiss filed by Defendants NovaStar, Stocker, Miller, and Stow will be **GRANTED** in part and **DENIED** in part.[24]

Plaintiffs' federal RICO claims (Count I) and Indiana RICO claims (Count II) are **DISMISSED** without prejudice as to NovaStar, Stocker, and the individual appraiser Defendants.[25] Furthermore, Plaintiffs breach of contract (Count IV), fraud (Count VIII), and promissory estoppel (Count XIV) claims are **DISMISSED** without prejudice as to NovaStar and Stocker. Finally, the Plaintiffs' claims for deception (Count IX), conversion (Count X), and unjust enrichment (Count XII) are **DISMISSED** without prejudice as to NovaStar, Stocker, and the individual appraiser Defendants.[26]

Each dismissal is premised on technical pleading deficiencies, and thus the Plaintiffs should have the opportunity to cure any defects through the filing of an additional amended complaint. The Plaintiffs shall have **thirty (30) days** from the date of this entry in which to file a second amended complaint. However, the court wishes to caution Plaintiffs that they should not interpret this ability to re-file as being another opportunity to take a

---

**24.** NovaStar and Stocker's joint motion to dismiss can be found at Docket No. 97. Miller and Stow's joint motion to dismiss can be found at Docket No. 112.

**25.** Again, for the purposes of this entry, the term "appraiser Defendants" refers collective-

ly to Defendants Miller, Stow, Johnson, Phillips, and Daniel.

**26.** Conversely, the motions to dismiss by NovaStar/Stocker and Miller/Stow are **DENIED** as to Counts VII and XVI respectively.

"scattergun" approach to pleading. Consistent with Fed.R.Civ.P. 11, Plaintiffs should focus their efforts on pleading the most appropriate, viable claims in any future complaint filed with this court.